MOBERG, Respondent, v. SCOTT, Appellant.

(161 N. W. 998.)

(File No. 4028.    Opinion filed March 22, 1917.)

1.    Seduction—Damages for—Seduction of Husband by Sale of Opium—Right of Wife to Sue, under Statute.

Where one alleged to have been conducting a drug store and pharmacy, with full knowledge of the poisonous and dangerous effects of opium and of its effects to| create a growing desire and craving for additional quantities thereof, and without the prescription of any licensed physician, without permit or license from the authorities of the city, without complying with the laws of the state, and without due inquiry as to whether the person to| whom it was sold (being plaintiff's husband) was aware of the insidious and dangerous character of opium, or of its effect, and knowing that plaintiff was his wife, sold and administered to him opium and commodities of which opium is an ingredient, and, although plaintiff frequently protested, and warned defendant and prohibited him from continuing such sales or administration of opium, continued to sell, etc., until he became an opium fiend, was wrecked in body and mind, and finally died, held, that a complaint so alleging not only showed a moral wrong, but such acts were in express violation of Pol. Code, Sec. 2861, making it unlawful to sell or give away opium or other commodities of which opium is an ingredient without a written permit or license, or without presentation of a prescription, etc.

2.    Husband and Wife—Selling Opium to Husband, Statutory Right of Wife to Sue—Physical Abduction, Whether Necessary—"Detriment"—Personal Rights, Distinguished From Abduction—Constitution—Statutes.

Under Civ. Code, Sec. 32, providing that: "The rights of personal relation forbid: 1.   The abduction of a husband from his wife. * * * 2.   The abduction or enticement of a wife from her husband. * * * 4.   An injury to a servant which affects his liability to serve his master;" Const., Art. 6, Sec. 20, providing that every man (person) for an injury done him in his property, person or reputation shall have remedy by due course of law; Civ. Code, Sec. 2422, providing that for every wrong there is a remedy; Sec. 2286, providing that every person suffering detriment from the unlawful act or omission of another may recover compensation as damages from the person in fault; Sec. 2287, providing that detriment is a loss or harm suffered in person or property; Sec. 7, providing that all original civil rights are either rights of persons or rights or property; and Sec. 27, providing that besides the personal rights mentioned or recognized in Political Code, every person has, subject to

the qualifications and restrictions provided by law, the right of protection from bodily restraint or harm, from personal insult, from defamation, and from injuries to his personal relations; held, that the injuries to person mentioned in said provision of Constitution, and the loss or harm suffered in person, within the meaning of said Sec. 2287, include injury to one's personal rights as well as physical injuries to the person; that therefore, in view of the removal of the disability of coverture by Civ. Code, Sec. 105, retaining to wife all civil and property rights of a single woman, and enabling her to sue for an injury to her "person or property," and in view of said other statutes, there is statutory authority for maintenance of suit by wife for damages for sale by defendant to plaintiff's husband of opium, from the effects of which he is alleged to have been wrecked in body and mind and to have finally died.

**3.  Husband and Wife—Damages for Selling Husband Opium— Wife's Common-Law Right Under Discoverture Statute.**

Under Laws 1890, Chap. 105, Sec. 6, providing that in this state the common law is in force except where in conflict with the Codes or the Constitution, construed in connection with Civ. Code, Sec. 27, providing that besides the personal rights recognized in Political Code, every person has, subject to qualifications and restrictions provided by law, the right of protection from bodily restraint or harm, from personal insult, from defamation, and from injury to his personal relations, held, that Sec. 37 is not exclusive of the common-law remedy; and, as Civ. Code, Sec. 105, in effect removed the disability of coverture, a wife has the right at present-day common-law to sue for damages resulting from sale by a druggist and pharmacist of opium to her husband.

Appeal from Circuit Court, Brown County.  Hon. THOMAS L. BOUCK, Judge.

Action by Nellie Moberg, against H. F. Scott, to recover damages resulting from alleged sale by defendant to plaintiff's husband of opium.  From an order overruling a demurrer to the complaint, defendant appeals.  Affirmed.

*Porter & Grantham,* and *Fred G. Huntington,* for Appellant.

*Campbell & Walton,* for Respondent.

(I.)  To point one of the opinion, Appellant cited: Fenneff v. N. Y. Cent. & H. R. R. R. Co. (Mass.) 89 N. E. 436; Paulson v. Langness, 16 S. D. 471, 93 N. W. 655; Kennedy v. Garrigan, 23 S. D. 265, 121 N. W. 783; Rowe v. Richards, 151 N. W. 1001.

Respondent cited: Flandermeyer v. Cooper, 85 Ohio St. 327, 26 Am. & Eng. Ann. Cas. (Ann. Cas. 1913A) 983; Tidd v. Skinner, 156 N. Y. Supp. 85.

(2.) To point two of the opinion, Appellant cited: Cooley on Torts, page 38; Civ. Code, Secs. 27, 32.

(3.) To point three of the opinion, Appellant cited: Lentz v. Holy Terror Mining Co. 13 S. D. 489; Meade v. Stratton, 87 N. Y. 493; Stafford v. Ledinger, 16 S. D. 118, 91 N. W. 462; Duffies v. Duffies, (Wis.) 45 N. W. 522; Lonstorf v. Lonstorf, 95 N. W. 961.

Respondent cited: Nolin v. Pearson, (Mass.) 4 L. R. A. N. S. 643; Humphrey v. Pope, (Cal.) 54 Pac. 847; Hollerman v. Howard, (N. C.) 56 Am. St. Rep. 672; 19 L. R. A. (N. S.) 636, (notes.)

GATES, P. J. The complaint in this case alleged:

"That the defendant, H. F. Scott, is and for more than 10 years last past has been continuously engaged in the business of conducting a drug store and pharmacy at the city of Aberdeen, Brown county, S. D. That on the 17th day of May, 1905, this plaintiff was married to one August Moberg, and lived and consorted with him as her husband continuously at the said city of Aberdeen until the peace and welfare of her home was destroyed by the unlawful, willful, negligent, malicious, and wrongful acts of the defendant, as follows, to-wit: That about the month of January, 1912, the defendant, being then a pharmacist and the proprietor of and conducting a drug store at the city of Aberdeen, and with full knowledge that this plaintiff was the wife of the said August Moberg, and with full knowledge of the poisonous and dangerous effects of opium and other commodities of which opium is an ingredient, and with full knowledge of its effects to create a growing desire and craving for additional quantities thereof, and without the prescription of any licensed physician of the state of South Dakota or elsewhere, and without a written permit or license from the authorities of the said city of Aberdeen, and without complying with the laws of the state of South Dakota, and without due inquiry as to whether the said August Moberg was aware of the insidious and dangerous character of opium, or whether the said August Moberg was then in fact ignorant of the effect of opium, and well knowing that this

plaintiff was his wife, did unlawfully sell and administer opium
and commodities of which opium is an ingredient to the said
August Moberg, and that, although this plaintiff frequently pro-
tested to the said H. F. Scott against his selling and administer-
ing such opium and commodities, and expressly warned and
prohibited the said defendant from continuing such sales or ad-
ministration of opium to her husband, well knowing that the con-
stant use of such drug had created an irresistible appetite on the
part of the said Moberg, well knowing that said drug was not
being used for mediciinal purposes, but through and on account
of the craving that had fastened itself upon him by long use
thereof, whereby he was becoming and had become an opium
fiend, and was thereby wrecking his body and mind, the said
defendant, notwithstanding the protests and warnings of plaintiff,
continued to sell and administer quantities of opium and commo-
dities containing opium to the said August Moberg, said sales
becoming more frequent until they occurred almost every day,
so that thereafter and about the month of January, 1913, the
said August Moberg became a slave to the opium habit, and was
thereby deprived of moral sensibility and unfit and incapable at
all times thereafter to give the aid, support, affection, society,
companionship and consortium which he had theretofore given
and which was due to plaintiff, his wife, and thereby at all times
thereafter until the death of said August Moberg on March 17,
1914, wrongfully, knowingly, and willfully depriving plaintiff of
the aid, support, affection, society, companionship, protection, and
consortium of her husband, and causing her grief, mortification,
and shame, and that finally, in consequence of the defendant's
unlawful, willful, and malicious acts, the said August Moberg,
on the 17th day of March, 1914, died at the home of the plain-
tiff in the said city of Aberdeen. That by reason of the said
wrongful, unlawful, and malicious acts of the said defendant,
this plaintiff, for more than one year prior to the said 17th day
of March, 1914, was required to, and did during a great part of
the time, nurse and care for the said August Moberg during
frequent spells of illness caused and brought about by reason of
the said unlawful and malicious acts of the defendant, and be-
cause thereof, and because of the loss of his aid, support, af-
fection, society, companionship, and consortium during the whole

of said period, this plaintiff suffered great and grievous mental anguish, physical agony, mortification, and shame, all to her damage in the sum of $10,000. Wherefore plaintiff demands judgment against defendant for the sum of $10,000 actual damages, and $5,000 as exemplary damages, together with the costs and disbursements of this action."

[1] The acts alleged to have been done by defendant were not only morally wrong, but were in express violation of section 2861, Pol. Code. The defendant demurred to the complaint for want of sufficient facts and for plaintiff's lack of capacity to sue. Demurrer overruled. Defendant appeals.

· [2] Section 32, Civ. Code, provides:

"The rights of personal relation forbid: 1. The abduction of a husband from his wife or of a parent from his child. 2. The abduction or enticement of a wife from her husband, of a child from a parent, or from a guardian entitled to its custody, or of a servant from his master. 3. The seduction of a wife, daughter, orphan sister or servant, and, 4. Any injury to a servant which affects his liability [ability] to serve his master."

Counsel for appellant ask us to hold that because subdivision 1 prohibits the abduction of husband from wife while subdivision 2 prohibits the abduction or enticement of wife from husband, there is no remedy for any enticement of the husband from the wife short of actual, physical carrying off. Looking further into that section, we come upon subdivision 4. No doubt counsel would admit that if defendant had done the same acts to plaintiff's servant, to such extent as to affect the servant's ability for service, plaintiff could recover. But if appellant's contention is correct, while plaintiff may sue for injuries caused to the relation of master and servant, she may not sue for injuries caused to the higher and more sacred relation of husband and wife. Such a discrimination is intolerable. It could only be sustained by a strict, literal interpretation of said section 32 and by shutting one's eyes to many other Code provisions. We might hold, as did the California court in Humphrey v. Pope, 122 Cal. 253, 54 Pac. 847, that the word "abduction" in subdivision 1 is used in its broadest sense, and thus justify this action solely upon that subdivision of the section, but we prefer to base our decision on broader grounds.

Said section 32 does not purport to assert that the rights of personal relation may not forbid other things than those mentioned. It does not say that the forbidden things are only those set forth in the four subdivisions, so that if there are other provisions of law which recognize plaintiff's right of action, she can recover in this case.

Const. art. 6, §20, provides:

"Every man (person) for an injury done him in his property, person or reputation shall have remedy by due course of law."

Section 2422, C. C., provides:

"For every wrong there is a remedy."

Section 2286, C. C., provides:

"Every person who suffers detriment from the unlawful act or omission of another may recover from the person in fault a compensation therefor in money, which is called damages."

Section 2287 provides:

"Detriment is a loss or harm suffered in person or property."

Section 7, C. C., provides:

"All original civil rights are either: 1. Rights of person; or, 2. Rights of property."

Section 27, C. C., provides:

"Besides the personal rights mentioned or recognized in the Political Code, every person has, subject to the qualifications and restrictions provided by law, the right of protection from bodily restraint or harm, from personal insult, from defamation, and from injury to his personal relations."

It is clear therefore that the injuries done to one in his person, within the meaning of the above section of the Constitution, and the loss or harm suffered in person, within the meaning of section 2287, C. C., include injury to one's personal rights as well as physical injuries to the person. So that, but for the question of coverture, the present action is fully warranted by statute. But by section 105, C. C., the disability of coverture, so far as the present action is concerned, was entirely removed. That section reads in part as follows:

"The wife shall have and retain after marriage all the civil and property rights of a single woman * * * and for any injury

to her reputation, person or property, she may sue in her own name without joining her husband as party plaintiff."

The Massachusetts discoverture statute (section 6, c. 153, Rev. Laws 1902), reads as follows:

"A married woman may sue and be sued in the same manner as if she were sole; but the provisions of this section shall not authorize suits between husband and wife."

Under that statute the court said, in the case of Nolin v. Pearson, 191 Mass. 283, 77 N. E. 890, 4 L. R. A. (N. S.) 643, 114 Am. St. Rep. 605, 6 Ann. Cas. 658:

"The disability of coverture, exclusive of suits between husband and wife, has been removed, and since the first enactment she has been liable to be sued, and might bring suit in the same manner as if sole. In consequence of this broad and comprehensive language she became, so far as civil procedure is concerned, discovert as to all persons except her husband; and, whenever injured in her person or estate, a married woman may bring suit in her own name against the wrongdoer for damages suffered, which upon recovery become her exclusive property. * * * The loss of the essential element of matrimonial fellowship afforded by the husband's society and exclusively given to her by the contract of marriage, when accomplished by his seduction at the inducement of another woman, is an injury as tangible, and from which she may suffer as acutely, and with more disastrous consequences to herself, than from loss of reputation caused by libel or slander in which compensatory damages for mental suffering may be assessed; or from the injury, if, under Rev. Laws, c. 153, §10, she is engaged in business on her separate account, that may follow from malevolently depriving her of possible custom, when such a result is accomplished otherwise than by fair competition; or from the wrong caused by the violation of contracts of service between her and those she employs where a breach by the servant is induced without justifiable cause by the intentional acts of strangers, although in all of these instances the law gives to her an ample remedy. * * * Our statute, as we have said, is expressed in the broadest terms. It permits a recovery by a married woman not only for injury in any form done to her person or property, but for damages which flow from a wrong suffered from a violation of personal rights. The allegations of

the declaration disclose, not only the commission of a felony, but all the elements of a wrongful act deliberately done for the purpose of working an injury to the plaintiff, and which actually has been accomplished."

That statue in legal effect is the same as ours so far as concerns this case, so it would seem that in view of our section 105, C. C., and the other sections of our statute above cited there is ample statutory authority for the maintenance of this action.

[3] Again, since the common-law disabilities of the wife have been almost entirely removed, such an action, under present-day common-law, may be brought by the wife regardless of other statutory authority and regardless of what the early common-law was. In Flandermeyer v. Cooper, 85 Ohio St. 327, 98 N. E. 102, 40 L. R. A. (N. S.) 360, Ann. Cas. 1913A, 983, the court said:

"The primary and most important question presented by this record is whether a wife has a common-law right of action against one who wrongfully and maliciously interferes with the marital relationship and deprives her of the society, companionship,, and consortium of her husband. In the absence of a statute authorizing such recovery her right to maintain this action rests wholly on the common law, and if the common law does not afford her a right of action, then she cannot maintain this suit, and the demurrer to the petition should have been sustained. It is very clear that originally the common law recognized no such right in the wife. By the primitive law, the only member of the family deemed to be harmed by an unjustifiable disturbance of the family relation was the head of the family. Blackstone in his Commentaries, vol. 3, pp. 142, 143, says that these torts directed against the peace and tranquility of domestic relations are actionable only when committed against the husband. In the case of Lynch v. Knight, 9 H. L. Cas. (Eng.) 577, Lord Wensleydale held that: 'No recovery could be had without joining the husband in the suit, who himself must receive the money, which would not advance the wife's remedy, and to allow her to recover in such an action would involve the absurdity that the husband might also sue for such a cause.' It must be remembered, however, that this interpretation of the common law, with reference to the wife's right to maintain an action of this character, obtained upon the theory that the wife's personality merged in that

of her husband's, and that she was not then entitled to hold property separate and apart from her husband, and not authorized to bring suit in her own name. Now the legal status of the wife has been changed by legislation. Her legal personality is no longer merged in that of her husband. By force of the several statutes in this state in reference thereto, a husband has no longer any dominion over the separate property of his wife, and she may maintain an action in her own name, without joining her husband in the suit. The right of action growing out of an injury to her personal rights is her separate property, for which she may maintain an action in her own name. The right of the wife to the consortium of the husband is one of her personal rights. It therefore follows that the principle of the common law which allowed a right of action to the husband for the invasion of this right, now, under the changed condition of affairs and in view of the present legal status of the wife, applies to her equally with the husband. It is said by Burdick in his Law of Torts, at page 276, that: 'With this change in her legal status came naturally a change in the judicial conception of her marital wrongs. As she could maintain an action in her own name, and damages recovered would be her sole and separate property, one of the chief objections urged by Lord Wensleydale disappeared. As the law now recognized her legal equality with her husband, Blackstone's reasoning, based upon the superiority of one party and the inferiority of the other party to the marital relation, had no longer the foundation of even a fiction.' A statutory right cannot change except by action of the law-making power of a state. But it is the boast of the common law that: 'Its flexibility permits its ready adaptability to the changing nature of human affairs.' So that whenever, either by the growth or development of society or by the statutory change of the legal status of any individual, he is brought within the principles of the common law, then it will afford to him the same relief that it has theretofore afforded to others coming within the reason of its rules. If the wrongs of the wife are the same in principle as the wrongs of the husband there is now no reason why the common law should withhold from her the remedies it affords to the husband. Hale on Torts on page 278, says: 'In natural justice, no reason exists why the right of the wife to maintain an action

against the seducer of her husband should not be coextensive with his right of action against her seducer.   The weight of authorities and the tendency of the legislation strongly incline to the latter opinion.'   1 Cooley on Torts (3d Ed.) page 477, says: 'Upon principle this right in the wife is equally valuable to her as property, as is that of the husband to him.   Her right being the same as his in kind, degree, and value, there would seem to be no valid reason why the law should deny to her the redress which it affords to him. * * * The gist of the action is the loss of consortium, which includes the husband's society, affection, and aid.' "

Now prior to statehood there might have been good reason, in view of section 6, Civ. Code 1877, Comp. L. 1887, § 2505, for holding that section 32, C. C., covered the field which it purported to cover, and that therefore the common law was not applicable. Said section 6 reads as follows:

"In this territory there is no common law in any case where the law is declared by the Codes."

But by chapter 105, Laws 1890, said section 6 was changed, and it appears in the Revised Civil Code of 1903 as follows:

"In this state the common law is in force except where it conflicts with the Codes or the Constitution."

Therefore either upon present-day common law, in view of the discoverture of the wife by statute, or because of other statutes, the courts of nearly all of the states in the Union, with the exception of Wisconsin, Maine, and New Jersey, sustain the wife's right to bring an action similar in character to this.   For both reasons we sustain the complaint and approve the ruling of the trial court.   We refrain from citing other authorities, but a list of most of the cases upon this question may be found in the Massachusetts case and in the note appended thereto in the L. R. A. publication thereof.

Counsel for appellant call our attention to two decisions of this court apparently holding to the contrary, viz.   Paulson v. Langness, 16 S. D. 471, 93 N. W. 655; Kennedy v. Garrigan, 23 S. D. 265, 121 N. W. 78?, 21 Ann. Cas. 392.   An examination of the briefs in the former case discloses that the action, as stated by the plaintiff therein, was based upon the provisions of chapter 72 of the Laws of 1897, entitled "Regulating the Manufacture

and Sale of Intoxicating Liquors." No claim was made that any action would lie regardless of such statute. Therefore those statements contained in that opinion which touch on the question now before this court were mere obiter dictum In the latter case the court was considering contract obligations, i. e., actions upon liquor dealer's bonds. The appeal therein in no manner presented any question now before us, and all references to Paulson v. Langness, supra, and the holding therein were unnecessary to the decision of that appeal.

The order of the trial court appealed from is affirmed.