1996 SD 146

**Paul T. GREEN and Elizabeth Jane Sammis, Individually and as Co–Executors of the Estate of Mayme C. Green, Jointly and Severally, Plaintiffs and Appellees,**

v.

**SIEGEL, BARNETT & SCHUTZ, a South Dakota Partnership, engaged in the practice of law, Petitioner and Appellant.**

No. 19435.

Supreme Court of South Dakota.

Argued Oct. 21, 1996.

Decided Dec. 31, 1996.

J.M. Grossenburg, Winner, for plaintiffs and appellees.

James A. Wyly of Richardson, Groseclose, Wyly, Wise & Sauck, Aberdeen, for petitioner and appellant.

GILBERTSON, Justice.

[¶ 1.] Siegel, Barnett & Schutz (hereinafter Law Firm), a partnership engaged in the practice of law in South Dakota, appeals from the trial court's summary judgment ruling that SDCL 15–2–13 and 15–2–14.2, providing the statutes of limitation for legal malpractice actions in this state, are unconstitutional in violation of Article VI, § 20 of the South Dakota Constitution. We reverse and remand with instruction.

### FACTS AND PROCEDURE

[¶ 2.] Paul Green and Elizabeth Sammis, plaintiffs and appellees, are the children of Mayme Green and co-executors of her estate. Mayme died June 27, 1993.

[¶ 3.] In November 1976, Paul Green hired Law Firm to draft trusts for his three minor children that would qualify for annual federal gift tax exclusions for the purpose of receiving gifts from himself and from Mayme, the children's grandmother. In 1983, Elizabeth Sammis hired Law Firm to draft a similar trust for her child and any future children. The attorney in the firm who drafted the trusts died two years later. There was no

further representation of the family by the Law Firm.

[¶ 4.] From 1976 until Mayme's death in 1993, she made substantial gifts to the trusts created for the respective children of Paul Green and Elizabeth Sammis. However, these gifts did not qualify for the annual federal gift tax exclusions and were considered part of Mayme's taxable estate at her death. According to Green and Sammis, approximately $128,250.00 in additional federal estate tax was assessed, which they perceive to be the result of professional negligence of Law Firm.

[¶ 5.] On April 19, 1995, Green and Sammis sued Law Firm for legal malpractice alleging breach of contract for professional services by negligently drafting these two trusts. Law Firm moved for summary judgment on grounds that the action was barred by the statutes of limitation provided by SDCL 15-2-13 and 15-2-14.2. The trial court denied the motion and held the statutes to be unconstitutional under the "open courts provision" of the South Dakota Constitution, Article VI, § 20.

[¶ 6.] Law Firm obtained an intermediate appeal from the trial court's order, raising the following issue before this Court:

> Whether the trial court erred in ruling SDCL 15-2-13 and 15-2-14.2 are unconstitutional in violation of Article VI, § 20, the "open courts" provision of the South Dakota Constitution?

## STANDARD OF REVIEW

■ [¶ 7.] Our review of the constitutionality of a statute is de novo. *Kyllo v. Panzer*, 535 N.W.2d 896, 897 (S.D.1995). We recently noted that:

> 'There is a strong presumption that the laws enacted by the legislature are constitutional and the presumption is rebutted

only when it clearly, palpably and plainly appears that the statute violates a provision of the constitution. Further, the party challenging the constitutionality of a statute bears the burden of proving beyond a reasonable doubt that the statute violates a state or federal constitutional provision.'

*State v. Hauge*, 1996 SD 48, ¶ 4, 547 N.W.2d 173, 175 (citations omitted); *Kyllo*, 535 N.W.2d at 898; *Simpson v. Tobin*, 367 N.W.2d 757, 765 (S.D.1985).

## ANALYSIS AND DECISION

■ [¶ 8.] Statutes of limitation are constitutionally valid enactments that involve the Legislature's balancing of the hardship caused by the potential bar of a just claim with the advantage of barring stale claims. Note, *Daugaard v. Baltic Cooperative Building Supply Association: Statutes of Limitation Held Unconstitutional*, 30 SDLRev 157 (1984). The two principal reasons given for the enactment of a statute of limitation are that:

> (1) it reflects a policy of law, as declared by the legislature, that after a given length of time a defendant should be sheltered from liability and furthers the public policy of allowing people, after the lapse of a reasonable time, to plan their affairs with a degree of certainty, free from the disruptive burden of protracted and unknown potential liability ... and (2)[it] avoid[s] the difficulty in proof and record keeping which suits involving older claims impose.

*Sanborn v. Greenwald*, 39 Conn.App. 289, 664 A.2d 803, 811–12 (1995)(upholding the constitutionality of a legal malpractice statute of limitation under the open courts provision of that state's constitution).

[¶ 9.] SDCL 15-2-13, providing a six-year statute of limitations period, is applicable to the 1976 trust benefiting the Green children.[1]

---

1. SDCL 15-2-13 provides, in pertinent part:
   Except where, in special cases, a different limitation is prescribed by statute, the following civil actions other than for the recovery of real property can be commenced only within six years after the cause of action shall have accrued:
   (1) An action upon a contract, obligation, or liability, express or implied....

   (4) An action for taking, detaining, or injuring any goods....
   (5) An action for ... any other injury to the rights of another not arising from contract and not otherwise specifically enumerated in §§ 15-2-6 to 15-2-17, inclusive.

SDCL 15–2–14.2, enacted in 1977 and providing a three-year statute of limitations period, is applicable to the 1983 trust benefiting the Sammis children.[2] This action was commenced April 19, 1995, twelve years after the 1983 trust was drafted, and nineteen years after the drafting of the 1976 trust. Therefore, under either statute, the time within which an action is permitted has long ago expired. There is no allegation of fraudulent concealment, *Koenig v. Lambert,* 527 N.W.2d 903, 905 (S.D.1995), or a continuous relationship, *Schoenrock v. Tappe,* 419 N.W.2d 197, 199 (S.D.1988), such that would toll the statutory limitations period from running.

[¶ 10.] In *Hoffman v. Johnson,* 374 N.W.2d 117, 122 (S.D.1985), we held the statute of limitations provided by SDCL 15–12–13 commences running in legal malpractice actions from the date of occurrence of the alleged malpractice. *See Holy Cross Parish v. Huether,* 308 N.W.2d 575, 578, n * (S.D.1981) (for an early case applying the occurrence rule). Since our decision in *Hoffman,* this Court has consistently held that the present statute of limitations for legal malpractice actions, SDCL 15–2–14.2, is a rule of occurrence rather than date of discovery or date of damage. *Keegan v. First Bank of Sioux Falls,* 519 N.W.2d 607, 612 (S.D.1994); *Haberer v. Rice,* 511 N.W.2d 279, 287 (S.D. 1994); *Shippen v. Parrott,* 506 N.W.2d 82, 85 (S.D.1993); *Kurylas, Inc. v. Bradsky,* 452 N.W.2d 111, 113–15 (S.D.1990); *Schoenrock,* 419 N.W.2d at 199–200.

> Under the occurrence rule, absent an attorney's fraudulent concealment of his or her negligent advice, the statute of limitations on a claim of attorney malpractice begins to run at the time of the alleged negligence and not from the time when the negligence is discovered or the consequential damages are imposed. We are to look at what act or omission starts the clock running under the instant facts for the statute of limitations purposes.

**2.** SDCL 15–2–14.2 provides "[a]n action against a licensed attorney, his agent or employee, for malpractice, error, mistake or omission, whether based upon contract or tort, can be commenced only within three years after the alleged malpractice, error, mistake or omission shall have occurred. This section shall be prospective in ap-

*Keegan,* 519 N.W.2d at 612 (internal citations omitted). We have held that the act or omission begins the running of the limitations period whether or not the act or omission could have later been cured. *Id.* at 613 (quoting *Kurylas, Inc.,* 452 N.W.2d at 115, and citing *Schoenrock*).

[¶ 11.] This appeal presents for the first time the question whether our legal malpractice action statutes of limitation provided in SDCL 15–2–13 and 15–2–14.2 are unconstitutional; specifically, whether they violate the "open courts" provision found in Article VI, § 20 of our State Constitution. This provision holds that: "[a]ll courts shall be open, and every man for an injury done him in his property, person or reputation, shall have remedy by due course of law, and right and justice, administered without denial or delay." In ruling that SDCL 15–2–13 and SDCL 15–2–14.2 were unconstitutional, the trial court applied our decision in *Daugaard v. Baltic Co-op. Building Supply Ass'n,* 349 N.W.2d 419 (S.D.1984) (holding unconstitutional a construction deficiency statute of repose and a products liability statute of repose under the "open courts" provision).

[¶ 12.] This Court was sharply divided in *Daugaard* over the interpretation of Article VI, § 20, the "open courts" provision. Both viewpoints base their arguments on the text of this provision. "Our constitution, as enacted by our forefathers and occasionally amended, is solid core upon which all our state laws must be premised." *Daugaard,* 349 N.W.2d at 425. "Article VI, § 20 guarantees a right of access to the courts for redress only of causes of action recognized under common law or by statute and does not in and of itself create causes of action." *Id.* at 427 (Wollman, J., dissenting). In the matter now before us we once again visit the question of the proper interpretation of this constitutional provision.

[¶ 13.] We have interpreted the "open courts" provision as a "guarantee that

plication." *See Kotval v. Gridley,* 698 F.2d 344, 348 (8th Cir.1983) (holding the limitations period in this statute is not applicable to legal malpractice action that accrues before and is brought after the effective date of this statute; such action is governed by the statute of limitations in effect at the time the action accrues).

'for such wrongs as are recognized by the laws of the land[3] the courts shall be open and afford a remedy.' " *Kyllo,* 535 N.W.2d at 901 (quoting *Simons v. Kidd,* 73 S.D. 41, 46, 38 N.W.2d 883, 886 (1949)). In *Oien v. City of Sioux Falls,* 393 N.W.2d 286, 290 (S.D.1986), we held this provision means that "where a cause of action is implied or exists at common law without statutory abrogation, a plaintiff has a right to litigate and the courts will fashion a remedy." Article VI, § 20 provides a right of access to the courts for causes of action recognized by common law or statute. It does not create rights of action. *Behrns v. Burke,* 89 S.D. 96, 229 N.W.2d 86, 88 (1975); *Simons, supra.* We have held that reasonable conditions on a cause of action are not unconstitutional. *See Heikes v. Clay County,* 526 N.W.2d 253, 255 (S.D.1995); *Baatz v. Arrow Bar,* 426 N.W.2d 298, 304 (S.D.1988).

■ [¶ 14.] As a matter of federal constitutional law, statutes of limitation go to the matter of remedy, not to the destruction of fundamental rights. *Chase Securities Corp. v. Donaldson,* 325 U.S. 304, 314, 65 S.Ct. 1137, 1142, 89 L.Ed. 1628, 1636 (1945). *See also State v. Burns,* 524 N.W.2d 516, 520 (Minn.Ct.App.1994). During the period preceding the adoption of our state constitution in 1889, this was the generally recognized rule throughout the country by both the federal and state courts. *Campbell v. Holt,* 115 U.S. 620, 625–27, 6 S.Ct. 209, 211–13, 29 L.Ed. 483 (1885).

■ [¶ 15.] However, as noted in *Daugaard,* the South Dakota Constitution is free to provide greater protections to its citizens than are granted under the federal constitution. 349 N.W.2d at 425 (citing *State v. Opperman,* 247 N.W.2d 673 (S.D.1976)). Thus, we must conduct an analysis of the origin of our statutes creating the cause of action for attorney malpractice, their corresponding statutes of limitation and Article VI, § 20 to determine if there is a constitutional basis for the existence of the limitations in this case.

■ [¶ 16.] In 1877, twelve years prior to the adoption of our state constitution, the Dakota Territorial Legislature codified the statute which creates the basis of recovery for breach of a contract which is currently SDCL 21–2–1.[4] The same Territorial Legislature also enacted a six-year statute of limitations for causes of action for breach of contract, that currently is found at SDCL 15–2–13.[5] However, this statute of limitation was a two-edged sword. The legislature also passed what is now SDCL 53–9–6 which provided in part that "[e]very provision in a contract restricting a party from enforcing his rights under it by usual legal proceedings in ordinary tribunals, or *limiting his time to do so, is void"* (emphasis added). During that same year, the Legislature codified the common law of negligence at SDCL 20–9–1[6]

3. SDCL 1–1–23 declares that the will of the sovereign power is expressed:
   (1) By the Constitution of the United States;
   (2) By treaties made under the authority of the United States;
   (3) By statutes enacted by the Congress of the United States;
   (4) By the Constitution of this state;
   (5) By statutes enacted by the Legislature;
   (6) By statutes enacted by vote of the voters;
   (7) By the ordinances of authorized subordinate bodies;
   (8) Rules of practice and procedure prescribed by courts or adopted by departments, commissions, boards, officers of the state or its subdivisions pursuant to authority so to do.

4. SDCL 21–2–1 provides, in pertinent part:
   For the breach of an obligation arising from contract, the measure of damages, except where otherwise expressly provided by this code, is the amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom. . . .

5. This is the statute, applicable to legal malpractice actions accruing prior to 1977, which is applicable to the 1976 drafting of the Green trust document. SDCL 15–2–14.2, the statute of limitations applicable to the 1983 drafting of the Sammis trust document, provides a three-year limitations period on malpractice actions, and was enacted in 1977.

6. SDCL 20–9–1 provides in part: "[e]very person is responsible for injury to the person, property, or rights of another caused by his willful acts or caused by his want of ordinary care or skill[.]" In *Haberer,* 511 N.W.2d at 286, this Court recognized that "[a] legal malpractice suit may have two causes of action, one which is for breach of contract and another in negligence. The case

and the common law of damages. It also established a statute of limitations for negligence resulting in damage to personal property (now SDCL 15–2–13), such as a financial loss. Further, that Legislature made it clear that the common law was invalid to the extent it conflicted with legislative enactments. CivC 1877 § 3, 5 & 6, now SDCL 1–1–23 and 1–1–24.[7] The Supreme Court of the Dakota Territory judicially recognized and enforced the six-year statute of limitations for contract. *Rathbone v. Coe*, 6 Dak 91, 50 N.W. 620 (1888). Thus, it is clear that the "laws of the land" from the creation of our first statutory enactments in 1877 up to the adoption of our state constitution allowed for this type of litigation to be commenced only within the six-year period of time.

Clearly at this point, the Territorial Legislature could substantially alter or modify these statutes as only one year before, the United States Supreme Court had held 'a person has no property, no vested interest, in any rule of the common law.' *Munn v. Illinois*, 94 U.S. 113, 134, 24 L.Ed. 77, 87 (1876). This continues to be the existing rule of law to his day. *Duke Power Co. v. Carolina Environmental Study Group, Inc.*, 438 U.S. 59, 88 n. 32, 98 S.Ct. 2620, 2638, n. 32, 57 L.Ed.2d 595, 620 n. 32 (1978).

*Matter of Certif. of Questions of Law*, 1996 SD 10, ¶ 69 n. 18, 544 N.W.2d 183, 198 n. 18. *See also Silver v. Silver*, 280 U.S. 117, 50 S.Ct. 57, 74 L.Ed. 221 (1929); *Schendt v. Dewey*, 246 Neb. 573, 520 N.W.2d 541, 546 (1994).

[¶ 17.] The South Dakota Constitution, including Article VI, § 20, was adopted in 1889. The Constitutional Debates which preceded it are void of any evidence that the Constitutional Convention in any way intended to abrogate or modify the existing authority of our Legislature to adopt statutes of limitation.[8] Similar "open courts" provisions appeared in many state constitutions and, at this time, the prevailing view was that the provision prohibited the selling of justice or requiring fees or fines for a judicial officer to act. *In re Lee*, 64 Okla. 310, 168 P. 53 (1917). Interpreting a constitutional provision identical to our Article VI, § 20, which existed in its own state constitution, the North Dakota Supreme Court determined:

> We are quite satisfied, however, *prior to the adoption of the North Dakota Constitution,* the meaning had extended its original boundary, and that the provisions which are to be found in the Constitutions of all of the states were aimed, not merely against the selling of justice by the magistrates, but by the state itself; in other words, that a free and reasonable access to the courts and to the privileges accorded by the courts, and without unreasonable charges, was intended to be guaranteed to every one. (emphasis added)

*Malin v. La Moure County*, 27 N.D. 140, 145 N.W. 582, 586 (1914).

[¶ 18.] The effect of our State Constitution upon the legislature and its enactments was discussed in *Oien*, 393 N.W.2d at 290:

> The Constitution of South Dakota is not a grant but a limitation upon the lawmaking powers of the state legislature and it may enact any law not expressly or inferentially prohibited by the state or federal constitutions. . . . [I]n order to determine that an act is unconstitutional we must find some provision that prohibits the enactment of a statute rather than for grants of such power. (citations omitted).

---

within a case may be in contract, tort or equity." (citations omitted).

7. As originally drafted in 1877, this provision stated, "in this territory there is no common law in any case where the law is declared by the codes." In 1903, this was slightly amended to its current version. SDCL 1–1–24 provides, in part:

> In this state the rules of the common law . . . are in force, except where they conflict with the will of the sovereign power, expressed in the manner stated in § 1–1–23.

*See* footnote 3, *supra*.

8. *See* South Dakota Constitutional Convention Debates, Vol. 2, July 1889. The 1889 Constitutional Convention also relied upon debates which had occurred at the 1885 Constitutional Convention. A review of the 1885 debates also shows no intent to modify the authority of the Legislature to set statutes of limitation. *See* Dakota Constitutional Convention Debates, September 1885. What debate that arose over the drafting of other provisions of the South Dakota Constitution's Bill of Rights focused on the language of similar guarantees found in other state constitutions at that time.

Although many members of the Constitutional Convention were to become Legislators in the new State of South Dakota, the early State Legislatures felt no constitutional compulsion to strike down or even modify the existing statutes of limitations on contracts and negligent damage to personal property.[9]

[¶ 19.] The first case in which this Court had an opportunity to interpret Article VI, § 20 is *McClain v. Williams*, 10 S.D. 332, 73 N.W. 72 (1897). Therein the plaintiff recovered a judgment against the defendant for $18.00 and the defendant attempted to appeal despite the fact that a statute limited appeals to those cases in which the amount recovered was $75.00 or more. The defendant claimed that this limitation was in violation of the open courts provision of our Constitution. Judge Corson,[10] speaking for an unanimous Court, held that the provisions of the Constitution, including Article VI, § 20, were satisfied by allowing a trial by jury which the defendant had received. The Court further held that there was no constitutional limitation upon the prerogative of the Legislature from "limiting appeals to a defined class of cases, and prescribing at what stage and in what court ordinary litigation shall end." 10 S.D. at 335, 73 N.W. at 74.

[¶ 20.] In *Moberg v. Scott*, 38 S.D. 422, 161 N.W. 998 (1917), a wife sued a druggist for loss of consortium claiming the druggist had illegally sold her husband opium without a prescription which resulted in his addiction and ultimate death. The defendant countered that a statute should be interpreted in accordance with prior common law to the effect that only a husband as a man, and not a wife as a woman, could maintain such an action. We rejected such a contention by the defendant. We relied upon Article VI, § 20 and another statute (now SDCL 25–2–11 as amended) which we held to be statutory recognition of the current common law which would abolish prior common law limitations on a woman's right to bring such a suit.

Thus, the previous common law "right" of the defendant druggist to avoid such a suit by a woman had been statutorily abrogated by the legislature and the corresponding previous common law disability of the woman had been so removed "regardless of what the early common law was." 38 S.D. at 429, 161 N.W. at 1000. *See also Swanson v. Ball*, 67 S.D. 161, 290 N.W. 482 (1940); *Hoekstra v. Helgeland*, 78 S.D. 82, 98 N.W.2d 669 (1959).

[¶ 21.] In *Wolfe v. Order of UCT of America*, 70 S.D. 452, 18 N.W.2d 755 (1945), *rev. on other grounds*, *Order of United Commercial Travelers v. Wolfe*, 331 U.S. 586, 67 S.Ct. 1355, 91 L.Ed. 1687 (1947), we were faced with the question of whether a six-month limitation period contained in an insurance contract was valid under South Dakota law. The applicable statute was SDC 10.0705 (now SDCL 53–9–6 quoted at ¶ 16). In interpreting the contract, we held the six-month limitation period to be remedial only. 18 N.W.2d at 758.

[¶ 22.] In *Simons*, 73 S.D. at 46, 38 N.W.2d at 886, this Court followed the traditional view that Article VI, § 20 provided protection only for recognized legal rights and did not itself expand them by barring the Legislature from placing limitations on recovery for damages sustained:

The above provision of the constitution is judicial, not legislative. It is a guarantee that 'for such wrongs as are recognized by the law of the land the courts shall be open and afford a remedy.' It does not mean that the courts may usurp powers which belong to the legislative branch of government. A similar constitutional question was presented in Brown v. Wightman where the court said: 'The courts have however, always considered and treated those provisions, not as creating new rights, or as giving new remedies where none otherwise are given, but as placing a limitation upon the Legislature to prevent

9. South Dakota Constitutional Debates of 1889, Vol 2, p 2–3 and Legislative Manual of South Dakota, p 205–208 (1993 ed).

10. The views of Judge Corson are particularly enlightening as he served as a delegate to the 1885 Constitutional Convention and actively participated in the debate on the Bill of Rights which includes Article VI § 20 of our Constitution, and at the 1889 Constitutional Convention served as an officer and delegate. The text of Article VI, § 20 is verbatim from the drafts adopted at the 1885 and 1889 Constitutional Conventions.

that branch of the state government from closing the doors of the courts against any person who has a legal right which is enforceable in accordance with some known remedy. Where no right of action is given, however, or no remedy exists, under either the common law or some statute, those constitutional provisions create none.'

(internal citations omitted).

[¶ 23.] In *Behrns,* 89 S.D. 96, 229 N.W.2d 86, we failed to find a violation of Article VI, § 20 in a challenge against the guest statute as an injury protected by that statute did not constitute "wrongs as are recognized by the law of the land." Subsequently, in *Oien,* 393 N.W.2d at 290, we held that where a cause of action exists at common law without statutory abrogation a plaintiff has a right to litigate and the courts will fashion a remedy.

[¶ 24.] This method of analysis has not always resulted in a haven for defendants. Recently in *Kyllo,* 535 N.W.2d 896, we held that sovereign immunity could not constitutionally extend to state employees performing ministerial tasks. In so doing we relied upon our early cases which held that prior to and during the time of the adoption of Article VI, § 20 in 1889, a public employee was liable for negligently performing such ministerial tasks. "The common law of negligence existed well before the South Dakota Constitution, as did employees' personal liability for their wrongful conduct." *Id.* at 903. *See State v. Ruth,* 9 S.D. 84, 90, 68 N.W. 189, 190 (1896).

[¶ 25.] Most recently we affirmed our long-standing interpretation of this constitutional provision in *Matter of Certif. of Questions of Law,* 1996 SD 10, ¶ 83, 544 N.W.2d at 203: 'Open courts' is not a guarantee that all injured persons will receive full compensation or that remedies once existent will always remain so. *Kyllo,* 535 N.W.2d at 901; *cf. Wright [v. Colleton County School Dist.,* 301 S.C. 282*],* 391 S.E.2d [564] at 570 [(1990)]. Nor does this provision assure that a substantive cause of a action once recognized in the common law will remain immune from legislative or judicial limitation or elimination. *Kyllo,* 535 N.W.2d at 901; *Wright,* 391 S.E.2d at 570. Other-

wise, the state of tort law would remain frozen in the nineteenth century, immutable and eventually, obsolete. Reasonable restrictions can be imposed upon available remedies. *Kyllo,* 535 N.W.2d at 901; *Baatz v. Arrow Bar,* 426 N.W.2d at 298, 304 (S.D.1988). Our function is not to elevate common-law remedies over the Legislature's ability to alter those remedies, but rather, we are to interpret the laws as they effect the 'life, liberty, or property of the citizens of the State.' *Kyllo,* 535 N.W.2d at 901.... Taking guidance from the United States Supreme Court in its interpretation of the federal constitution, we see that the 'Constitution does not forbid the creation of new rights, or the abolition of old ones recognized by the common law, to attain a permissible legislative object.' *Duke Power Co.,* 438 U.S. at 88 n. 32, 98 S.Ct. at 2638 n. 32, 57 L.Ed.2d at 620 n. 32 (quoting *Silver v. Silver,* 280 U.S. 117, 122, 50 S.Ct. 57, 58, 74 L.Ed. 221 (1929)).

[¶ 26.] In construing a similar constitutional provision, the Supreme Court of North Carolina noted that those who advocate an expansive interpretation of this provision fail to give sufficient regard to the words "by due course of law."

For the legislature has not absolutely abolished all claims against builders and designers arising out of improvements they built or designed. Rather, it has established a time period beyond which such claims may not be brought even if the injury giving rise to the claim does not occur until the time period has elapsed.

We are confident that this condition to the legal cognizability of the claim does not violate the constitutional guarantee for that every 'injury done' there shall be a 'remedy.' The 'remedy' constitutionally guaranteed 'for an injury done' is qualified by the words 'by due course of law.' This means that the remedy constitutionally guaranteed must be one that is legally cognizable. The legislature has the power to define the circumstances under which a remedy is legally cognizable and those under which it is not.

*Lamb v. Wedgewood South Corp.*, 308 N.C. 419, 302 S.E.2d 868, 882 (1983).

[¶ 27.] Thus, it is clear that at the time of the adoption of Article VI, § 20, the state of the law in our jurisdiction recognized as constitutionally valid, a limitation on actions for breach of contract (including attorney malpractice) and negligent damage to property to exist for six years from the date of the breach of contract by a negligent act or omission and not beyond. Green and Sammis cite us to no convincing South Dakota legal or historical authority to the contrary.

[¶ 28.] We further note that were we to rule SDCL 15-2-13 unconstitutional, we can see no rational basis to limit the effect of such a ruling to legal malpractice. It would have the effect of radically altering SDCL 15-2-13 to state that in all actions for breach of contract and negligent damage to personal property, as well as all other actions covered by that statute, the statute would be unconstitutional and thus unenforceable until the damage is discovered, be it 17 years as occurred here, or any longer length of time into perpetuity.

[¶ 29.] Although the current statute of limitations in legal malpractice actions provided by SDCL 15-2-14.2 was not enacted until 1977, Green makes no argument that it should be treated differently than SDCL 15-2-13, which applies to legal malpractice actions accruing before 1977. *See Kotval*, 698 F.2d at 348. It is well settled that the Legislature may set reasonable conditions, including time limitations, on a plaintiff's right to bring a cause of action for injury. *See Heikes*, 526 N.W.2d 253 (upholding the constitutionality under the open courts provision of statutes requiring deposit of delinquent taxes prior to a suit for recovery of property sold for taxes). Herein there can be no surprise as SDCL 15-2-14.2 was enacted in 1977 and the Sammis trust was not drafted until 1983.

[¶ 30.] We conclude that under the facts of this case, these statutes are constitutional as applied to Green and Sammis. "'A defendant cannot claim that a statute is unconstitutional in some of its reaches if it is constitutional as applied to him.'" *State v. Hy Vee Food Stores, Inc.*, 533

N.W.2d 147, 150 (S.D.1995) (quoting *City of Pierre v. Russell*, 89 S.D. 70, 228 N.W.2d 338, 341 (1975) (quoting *Big Eagle v. Andera*, 508 F.2d 1293, 1297 (8th Cir.1975))); *see also Parker v. Levy*, 417 U.S. 733, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974); *Broadrick v. Oklahoma*, 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973). Plaintiffs claim the statutes of limitation applied to their case "unconstitutionally locked the courtroom door before the Green family had an opportunity to open it." We disagree. Although the Plaintiffs claim their cause of action did not accrue until the family was damaged following Mayme's death and the liability of her estate for additional estate taxes, the law of this state provides that legal malpractice actions accrue when the alleged malpractice occurs. *See Hoffman*, 374 N.W.2d at 122; *Keegan*, 519 N.W.2d at 612; *Haberer*, 511 N.W.2d at 287; *Shippen*, 506 N.W.2d at 85; *Kurylas, Inc.*, 452 N.W.2d at 113-15; *Schoenrock*, 419 N.W.2d at 199-200.

[¶ 31.] In reality, the Plaintiffs' argument underlying their cry of unconstitutionality is an urging of a rule of damages or discovery rather than the rule of occurrence that is the law of this State. *See Holy Cross Parish*, 308 N.W.2d at 578, n. *; *Hoffman*, 374 N.W.2d at 122; *Schoenrock*, 419 N.W.2d at 199-200; *Kurylas, Inc.*, 452 N.W.2d at 113-15; *Shippen*, 506 N.W.2d at 85; *Haberer*, 511 N.W.2d at 287; *Keegan*, 519 N.W.2d at 612. In this case, which alleges negligent drafting of trust documents, the "occurrence" was the 1976 and 1983 drafting of the two documents. Without making any judgment on the merits of this action, the negligence occurred, if at all, in 1976 and 1983. The statute of limitations runs from the date of the breach of duty and not from the time when the extent of the resulting injury is determined. *Holy Cross Parish*, 308 N.W.2d at 578, n. *; *Hoffman*, 374 N.W.2d at 122; *Keegan*, 519 N.W.2d at 612; *Haberer*, 511 N.W.2d at 287; *Shippen*, 506 N.W.2d at 85; *Kurylas, Inc.*, 452 N.W.2d at 113-15; *Schoenrock*, 419 N.W.2d at 199-200. *See* Francis M. Dougherty, Annotation, *When Statute of Limitations Begins to Run Upon Action Against Attorney for Malpractice*, 32 A.L.R.4th 260, 268 (1984). Although this issue has been addressed numerous times by this Court, the

Legislature has not amended either statute at issue here to reflect anything but a rule of occurrence in legal malpractice actions. If a discovery or damages rule is the appropriate basis to trigger the running of the statute, such arguments should be presented to the Legislature for its consideration as to what is the appropriate public policy for this State.

[¶ 32.] There simply is no legal basis to hold that these statutes of limitation "clearly, palpably, and plainly" violate Article VI § 20. *Heikes,* 526 N.W.2d at 255. As our predecessors have stated in their struggle with these issues, "[w]e sympathize with those who find the statute unjust, but we are bound to exercise judicial restraint ... and not substitute our judgment and wisdom for that of the legislature." *Behrns,* 89 S.D. at 108, 229 N.W.2d at 93. *See Accounts Management, Inc. v. Williams,* 484 N.W.2d 297, 300 (S.D.1992); *State Dep't of Public Safety v. Haddenham,* 339 N.W.2d 786, 790 (S.D. 1983). If a more fair method of limiting actions to a specific period of time would be to lengthen the period of time to bring an action or adopt a discovery or damage rule as the triggering event, the Legislature must make this determination as these arguments are public policy considerations within the domain of the Legislature to address and modify if it deems such action to be in the public welfare.[11]

[¶ 33.] These statutes of limitation do not restrict or destroy the right to bring a cause of action for legal malpractice, but rather, only establish the period of time in which a plaintiff must assert this right. "A statute of limitations does not create or extinguish a right, but only places a limitation on a remedy which may be tolled or waived." *Millman v. County of Butler,* 235 Neb. 915, 458 N.W.2d 207, 219 (1990) (citations omitted). This is a reasonable restriction upon an available remedy which the legislature may constitutionally impose. *Matter of Certif. of Questions of Law,* 1996 SD 10, ¶ 83, 544 N.W.2d at 203.

[¶ 34.] We reverse and remand with instruction to enter summary judgment in favor of Law Firm.

[¶ 35.] MILLER, C.J., and AMUNDSON and KONENKAMP, JJ., concur.

[¶ 36.] SABERS, J., concurs specially.

SABERS, Justice (concurring specially).

[¶ 37.] I agree that the three-year legal malpractice statute of limitations contained in SDCL 15-2-14.2 is not unconstitutional. The reason is obvious. The client has an opportunity to get a second opinion any time after the services are performed. The three-year period provides the client a reasonable opportunity to act on the advice or make other arrangements. One burned or killed from an explosion caused by faulty underground construction, as occurred in *Daugaard,* has no such opportunity. Therein lies the difference.

---

11. As Justice Oliver Wendell Homes stated in *Missouri, Kan, & Tex. Ry. v. May,* 194 U.S. 267, 268, 24 S.Ct. 638, 639, 48 L.Ed. 971 (1904):

> Great constitutional provisions must be administered with caution. Some play must be allowed for the joints of the machine, and it must be remembered that legislatures are ultimate guardians of the liberties and welfare of the people in quite a great a degree as the courts.

(quoted in Note, *Daugaard v. Baltic Cooperative Building Supply Association: Statutes of Limitation Held Unconstitutional,* 30 SDLRev 157, 165 (1984)).