CALVIN MILLER, PLAINTIFF-APPELLANT, v. TRANS OIL
CO., A CORPORATION, AND JOSEPH SZABO, DEFEND-
ANTS-RESPONDENTS, AND CHARLES SZABO, DEFEND-
ANT.

Argued April 18, 1955—Decided May 9, 1955.

*Mr. Francis M. Seaman* argued the cause for appellant (*Mr. Sam Weiss*, on the brief).

*Mr. Charles A. Rooney* argued the cause for respondents.

The opinion of the court was delivered by

WACHENFELD, J.   The appellant was seriously injured and his automobile which he was driving suffered extensive damage when it collided on Route 25 in Woodbridge with the rear of a trailer owned by Trans Oil Company which was attached to a tractor owned by Charles Szabo and driven by Joseph Szabo on the business of Trans Oil Company.

In the action the appellant brought to recover for his injuries and damage, the defendant Trans Oil Company counterclaimed, asserting his negligence was the proximate cause of the accident.

The jury returned a verdict of no cause of action on both the complaint and counterclaim, and the appellant appealed to the Appellate Division, where the judgment was affirmed. *Miller v. Trans Oil Co.*, 33 *N. J. Super.* 53 (1954).

The appellant's petition for certification was granted upon his application. *Miller v. Trans Oil Co.*, 17 *N. J.* 395 (1955).

The issue before us is limited to the query whether or not error was committed below in admitting the testimony of a witness that at about three-quarters of a mile before the scene of the accident a black sedan going at a fast rate of speed passed him and cut him off.

A resumé of the pertinent testimony indicates that on the day in question, September 19, 1951, at about 9:30 P. M., the appellant was driving his car in Woodbridge, New Jersey, going in the direction of Newark on Route 25. He was traveling in the slow lane near the right edge of the highway at a speed of between 40 and 45 miles an hour.

Route 25 in this vicinity is a dual highway going north and south, with a safety isle in the center. There are two lanes for northbound and two lanes for southbound traffic. The paved portion of the roadway for northbound traffic from the right edge of the road to the edge of the safety isle is about 24 feet wide, the isle being about ten feet wide.

The appellant testified he came upon the tractor-trailer, which was traveling 30 to 35 miles an hour, and deciding to pass it, he blinked his lights, blew his horn, increased his speed to about 50 or 55 miles an hour, and pulled to the left side of the road. Suddenly, without warning, the tractor swerved to the left into the fast lane and gave no signal or warning of any kind of its intention to do so. The left front of the appellant's car struck the right rear of the trailer.

The appellant called as one of his witnesses one Richard Hollyer, who had also been subpoenaed by the defendants. He testified that when he came upon the scene of the accident, the appellant was still in his car. The tractor was in the island facing west, and the trailer was facing northwest. The right rear of the trailer was at about the center of the highway.

On cross-examination, the witness was asked: "Did a black sedan, going at a terrific rate of speed, pass you just before you reached the scene of this accident?" There was an objection entered because the question did not constitute

"proper cross examination." The court agreed with the suggestion made and the witness was subsequently recalled on behalf of the defendant. A like question was then submitted to him: "Mr. Hollyer, did the black sedan automobile pass you, going in your direction, within three-quarters of a mile of the scene of this accident?" The question was objected to "unless it can be definitely stated that the sedan in question was the sedan of Calvin Miller," and secondly, upon the ground that the passing of any automobile three-quarters of a mile from the scene of the collision was too remote.

The court, commenting upon the fact that counsel for the plaintiff would have an opportunity to cross-examine the witness, allowed the question and the witness answered: "Yes, a black car did pass me." The witness was then asked: "Will you describe, if you will please, the course and the speed of that car? A. Well, I was travelling about 45, and this car passed me at quite a bit faster and cut directly in front of me, and cut me off the road."

Asked how the car looked or compared with respect to the appellant's car, the witness answered: "It was a black sedan, or a black, closed car. It was similar."

The witness then testified that he continued approximately three quarters of a mile and came upon the scene of the accident. When asked if there were any other black cars going in the direction in which the witness was proceeding between his car and the scene of the accident, he answered he did not know, he "didn't notice." He was then asked:

"Why then, sir, did you go over and give the truck driver your name?" To which he answered: "I thought it was the same car that had cut me off down the road."

On cross-examination, the following occurred:

"Now, Mr. Hollyer, the car that you say that cut you off was a black, closed automobile, wasn't it? A. That is right.

Q. Do you know the make of the automobile that passed you? A. I do not.

Q. You also said that you don't remember, or don't recall whether any other black cars passed you after that incident that you spoke of? A. I do not, sir.

Q. You don't know. Mr. Hollyer, can you say, under oath, that the car which passed you, and which you claim forced you off the highway, was the Calvin Miller automobile? A. No, sir."

These are the salient circumstances which frame the issue presently before us for decision, and it will be noted that the import of the witness' version varied, as it often does, depending upon the manner and method of inquiry.

The appellant in his brief with dramatic emphasis says the bell tolled by the jury did not have a clear sound. It was muffled by a palpable impediment in the purity of tone, and the fact that an unidentified black sedan three-quarters of a mile away had a minute before the accident cut off Hollyer does not, without more, afford a basis for a rational inference that the plaintiff driving his car caused the collision with a tractor-trailer. Neither the question nor Hollyer's answer could have any possible legal relevancy unless and until it was preceded or augmented by some evidence pointing to the car that cut off Hollyer as that of the plaintiff. The predicate of relevancy was entirely lacking.

We cannot subscribe to this reasoning as the authorities by overwhelming weight seemingly hold that although the witness' testimony deviates and is not positive, it nevertheless is admissible where he has actually observed a fact, even though he exhibits some deficiency in his observation. 3 *Wigmore, Evidence* (*3d ed.* 1940), § 726–728.

It is well settled that the relevancy of testimony must be tested by its probative value with respect to the points at issue, *DeCicco v. Marlou Holding Co.*, 137 *N. J. L.* 186, 189 (*E. & A.* 1948), and all relevant evidence is to be admitted unless some specific rule forbids it. *Simon v. Graham Bakery*, 17 *N. J.* 525 (1955); *Hampton v. Pennsylvania R. R.*, 115 *N. J. L.* 168, 169 (*E. & A.* 1935).

In *Kuczynski v. Humphrey*, 118 *N. J. L.* 321, 326 (*Sup. Ct.* 1937), it was said:

"In civil cases, it is generally sufficient if the circumstantial evidence be such as to afford a fair and reasonable presumption of the facts inferred. Circumstantial or presumptive evidence, as a basis for deductive reasoning in the determination of civil causes, is a

mere preponderance of probabilities. The evidence, though not reaching the pinnacle of certainty, is yet sufficient to sustain the burden of proof if it attain the level of probability."

In *Walsh v. Murray*, 315 *Ill. App.* 664, 43 *N. E. 2d* 562 (*App. Ct.* 1942), the factual situation was closely analogous to the present case. There two officers, deputy sheriffs, were on the same highway being traveled by the appellant and were going in the same direction. About a half mile from an intersection a green sedan passed them at a rapid rate of speed and disappeared around a curve in the road. The officers proceeded until they came to the curve, which was about a quarter of a mile from the intersection, when they saw that an accident had occurred. They then increased the speed of their car, passing all cars between them and the intersection. On arriving at the scene of the accident, they found a green sedan involved answering the description in color and design as the one that had just passed them. This was appellant's car.

One of the officers stated that in his opinion the green car was traveling about 60 miles an hour when it passed their car. Only a few seconds elapsed between the time the green car passed the officers and their arrival at the scene of the accident. They saw no other green car. Blackburn testified that no car passed through the intersection between the time of the accident and the arrival of the officers. The court held (43 *N. E. 2d*, at *page* 564) :

"Under such circumstances, we do not consider the admission of the testimony of the officers regarding the speed of the green car at the time it passed them, to constitute error. The facts and circumstances in evidence, were proper for the consideration of the jury upon the question of the identity of appellant's car, and whether the speed at which it was traveling at the time it passed the officers was maintained to the place of the accident."

To the same effect is *Carr v. Blackstock*, 319 *Ill. App.* 369, 49 *N. E. 2d* 279 (*App. Ct.* 1943). There the defendant admitted driving a black Packard automobile at a constant rate of speed for many miles prior to the accident. Testimony that a black Packard automobile going 70 miles an hour

passed the plaintiff's automobile prior to the accident and some distance from the scene was held admissible. The fact that the witness who so testified was unable to identify the driver of the Packard as the defendant did not render that testimony inadmissible, but went to the weight of the evidence rather than to its admissibility.

As stated by the Appellate Division in its opinion below:

"The fundamental proposition involved here is that all relevant evidence is to be admitted unless some specific rule forbids it. * * * By relevant evidence is meant any evidence having a tendency in reason to prove a matter in issue."

While acknowledging this rule is not universally accepted, some authorities prescribing "legal relevancy" and not mere relevancy as the test of admissibility, the Appellate Division noted:

"New Jersey does not accept this concept of legal relevancy, and it has been rejected by the *Uniform Rules* and the *Model Code. Morgan, Model Code, supra, pp.* 31–34; *James,* 29 *Cal. L. Rev.* 689 (1941) ; *Trautman,* 5 *Vanderbilt L. Rev.* 385 (1952) ; *cf. Montrose,* 70 *L. Q. Rev.* 527, 555 (1954). As stated in the *Model Code, supra, p.* 178, 'it would be as futile as it would be unwise to attempt to prescribe measurements of logical value.' "

■ Justice and common sense, fused by enlightened reasoning, engender a legal philosophy embodying the abolition of all obstacles having a tendency to deprive the jury of any facts, however remotely relevant or from whatever source, which gravitate toward assisting them in arriving at a correct solution of the factual equation confronting them. Intellectual productiveness is not increased nor is the truth maintained by withholding circumstances which may shed some helpful light.

We see no error in the admission of the questioned testimony.

■ Additionally, we have grave doubts that the Hollyer testimony adversely affected the substantial rights of the plaintiff. The verdict of the jury seems entirely consistent with basic and substantial justice. There is an abundance

of testimony indicating the accident was due to the excessive speed of and the lack of control by the appellant.

The weather was clear; the concrete pavement was dry; the road where the accident occurred was straight. The defendant's tractor-trailer had been standing at the intersection for two or three minutes, and there were nine lights on the back end of the trailer, all red; two directional lights, two red reflectors, and the name of the company were in luminous material. The reflectors, the luminous type, and the lights were all on at the time of the accident. Although it weighed ten tons, the trailer was moved 15 to 20 feet by the impact. The skidmarks of the appellant's automobile were 87 feet in length, 75 feet being before the debris from the collision and 12 feet thereafter. The appellant admitted drinking beer a few hours before the accident. A doctor testified he had an alcoholic odor after the crash, had consumed alcohol in excess, and the physician considered him practically drunk.

The appellant's description of the collision is difficult of belief, and all the surrounding facts and circumstances point unerringly to the appellant's own negligence, requiring no consideration of Hollyer's testimony.

Even if there was error but it was not prejudicial, the verdict would not be disturbed. *R. R.* 1:5–3(*b*); *Galloway v. Ford Motor Co.*, 5 *N. J.* 396 (1950); *Township of Parsippanny-Troy Hills v. Bowman*, 3 *N. J.* 97 (1949); *Central Hanover Bank & Trust Co. v. Herbert*, 1 *N. J.* 426 (1949); *Hall v. Centolanza*, 28 *N. J. Super.* 391 (*App. Div.* 1953); *Marano v. Sabbio*, 26 *N. J. Super.* 201 (*App. Div.* 1953).

The judgment below is affirmed.

*For affirmance*—Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT, WACHENFELD, BURLING, JACOBS and BRENNAN—7.

*For reversal*—None.