BURRINGTON, Respondent v. HEINE, Appellant v.
FURZE, Respondent

LIEN, et al., Respondents v. HEINE, Appellant

(215 N.W.2d 119)

(File Nos. 11094, 11095. Opinion filed February 22, 1974)

Franklin J. Wallahan, Hanley, Wallahan, Murray & Zastrow, Rapid City, Ralph Hoggatt, Lead, for appellant Heine.

William G. Porter, Costello, Porter, Hill, Banks & Nelson, Rapid City, Morman & Smit, Sturgis, for respondent Burrington.

Donald R. Shultz, Whiting, Lynn, Jackson, Shultz, Ireland & Lebrun, Rapid City, for respondent Furze.

Joseph M. Butler, Bangs, McCullen, Butler, Foye & Simmons, Rapid City, Walter Mueller, Overpeck, Mueller & Bennett, Belle Fourche, for respondent Lien.

WOLLMAN, Justice.

This is a consolidated appeal from judgments entered in the wrongful death and survival actions brought by the personal representatives of the estate of Sandra D. Lien, deceased (the Lien case, # 11094), against Kenneth W. Heine (Heine), and in the personal injury action brought by Richard Burrington (Burrington) against Heine (the Burrington case, #11095). Jury verdicts were returned against Heine in both cases and he appeals from the judgments entered thereon.

The lawsuits arose out of a collision that occurred at approximately 10 p. m. on July 18, 1969, on Highway 14A between Deadwood and Lead in Lawrence County, South Dakota, between an automobile operated by Burrington in which Sandra D. Lien was riding as a passenger, and an automobile owned and operated by Heine.

One of defendant Heine's witnesses, Orin Craig (who had served as town marshal of Central City, South Dakota, from 1954 until 1960), testified that at approximately 10 p. m., July 18, 1969, he was at the upper highway entrance to Central City near the Alpine Drive-In looking for a lost hub cap when he heard the noise of the acceleration of what he described as a powerful motor. He observed three cars coming up the highway from the direction of Deadwood. At the time, Mr. Craig was five or six feet from the shoulder of the highway at a spot one and one-tenth miles from where the accident ultimately occurred. Mr. Craig recognized one of the three cars, a white Pontiac, later identified as the car being operated by Burrington, from the fact that it had been owned by someone he knew in the community. He observed that one of the other two cars was a red Mustang, later identified as the automobile being operated by Furze. Mr. Craig testified that as the three cars came up past the Alpine Drive-In the red Mustang pulled out and passed the older car, which was in the lead and which was only traveling some 35 to 40 miles per hour, and then pulled back into the right lane of traffic, whereupon the white Pontiac turned out, passed the older car, pulled over into the right lane of traffic and then immediately turned out into the left lane and proceeded to drive abreast of the red Mustang. Mr. Craig kept the red Mustang and white Pontiac in his view for a distance of a little over a quarter of a mile, during which time he observed both cars traveling in a

southerly direction towards Lead on Highway 14A side by side at an increasing rate of speed. He testified that when these two cars reached what is known as the Terraville turnoff, which was at a point approximately one quarter of a mile from where Mr. Craig was standing, they had attained a speed of 75 to 80 miles an hour. At the point where the two cars drove up the road towards Lead, Highway 14A has two southbound lanes and one northbound lane.

Shortly after observing the Burrington and Furze cars drive past him and proceed out of view, Mr. Craig returned to his home to retire for the evening. Shortly thereafter he received a call notifying him of the accident in question. He proceeded immediately to the scene to assist and observed a red Mustang automobile, which looked to him like the same one that he had seen drive past the Alpine Drive-In a few minutes earlier, parked on the right-hand side of the highway a short distance beyond the point where the collision had occurred. He testified that he did not observe any other red Mustang automobiles in the immediate area.

There was testimony by Miss Sue Campbell, an employee of the Alpine Drive-In, that at approximately 10 p. m., July 18, 1969, she was out in the parking lot of the Alpine Drive-In cleaning up the area in preparation for closing when some noise drew her attention to two approaching automobiles, one red and one white in color. She recognized the white automobile as that belonging to Burrington. Miss Campbell recalled that shortly after the two automobiles drove past the Drive-In a jeep drove into the parking lot of the Drive-In. The driver of the jeep asked her whether the Drive-In was still open and was told that it had closed for the evening.

Defendant Heine testified that on the night of the accident he completed his work shift at the Homestake Mine at 9:40 p. m., and that he left the Mine in his automobile at approximately 9:55 p. m. and drove through the city of Lead and down Highway 14A to return to his lodgings at the Calamity Jane Motel. As he drove down Highway 14A to Dunmire's turnoff, the side road that leads to the motel where he lived, Heine noticed a car following him. Traffic bound from Lead to Deadwood on

Highway 14A must come around a right-hand turn in the road before passing Dunmire's turnoff. Heine testified that as he came around this corner, which he estimated to be some 100 feet up the hill from Dunmire's turnoff, all he could see were some lights flashing on the hill below him. He testified that, "and I proceeded on down and I knew I had plenty of time to make any turn when I turned my left turn signals on." (Heine had driven back and forth over this particular stretch of highway twice a day usually six days a week for more than five years.) He then looked in the rearview mirror to see where the following car was and then made a left turn into the middle lane to let the following car go by him on the right. In the area where the collision occurred Highway 14A has two lanes of travel for automobiles traveling from Deadwood to Lead and one lane of traffic for automobiles traveling from the direction of Lead to Deadwood. After turning into the middle lane, Heine looked to his left towards Dunmire's road to see whether the road was clear for him to make his left-hand turn and then looked down Highway 14A, where he saw the lights of two cars, one in each of the two oncoming lanes of traffic, coming towards him at a speed which he estimated to be "better than 80 miles an hour" some 200 feet away from him. Heine testified that the only thing that he could do under the circumstances was to try to make his left-hand turn as fast as he could to try to get out of the way of the oncoming cars. The Heine automobile and Burrington's automobile collided in the Lead-bound right-hand lane of travel. There was no physical contact between the Furze automobile and the Heine automobile.

Testifying on behalf of plaintiffs in the Lien case and plaintiff Burrington in the Burrington case, Steven James Litz, the driver of the automobile following defendant Heine, testified that he followed Heine's automobile all the way down the hill from Lead. As he approached Dunmire's turnoff he noticed that Heine's car had changed into the middle lane and reduced its speed. He testified that he saw no turn signal on the Heine car. He also observed two cars coming up the road towards the direction of the turnoff, both of which he testified were traveling in the far outside (right-hand) lane of travel. Mr. Litz slowed his car to remain behind the Heine vehicle, which had slowed down to about five miles per hour. He swerved onto the gravel on the far right-hand side of the road after the Burrington and Heine

vehicles collided because the Heine car had spun around towards him. Mr. Litz drove a short distance down the road, made a U turn and came back to the scene of the accident where he observed the Furze car parked on the right-hand side of the road at a point below the accident scene.

On cross-examination, Mr. Litz admitted that he had given a signed statement prior to trial stating that the Furze car had come towards him causing him to veer to the right to avoid a collision. He also testified on cross-examination that he had earlier estimated the speed of the Burrington and Furze cars at approximately 60 to 65 miles per hour. The speed limit in the vicinity of the accident was 50 miles per hour.

Burrington testified that as he and Miss Lien drove past the Alpine Drive-In they observed that the lights were being shut off for the evening. He testified that he observed no other traffic traveling in the same direction as his vehicle until he reached a point a tenth of a mile from what he and other witnesses described as the Calamity Jane curve or turnoff. At this point he came up behind a red Ford Mustang being driven by defendant Furze. He turned out and passed the Furze vehicle and then pulled back into the right-hand lane and proceeded on towards Lead. He testified that as he looked back in his rearview mirror he noticed that Furze was still traveling behind him in the right-hand lane. As he approached the Dunmire turn-off Burrington noticed some lights coming around the top corner of the hill coming down the highway. He testified that he saw no turn signal on the on-coming car and that all of a sudden the car came across in front of him.

Burrington was driving a 1964 modified Pontiac automobile powered by a 421 cubic inch, 330 horsepower engine. The automobile was equipped with a four-speed manually shifted transmission, a four barrel carburetor, a tachometer and magnesium wheels. The entire body had been lifted with special springs. The speedometer was not operating at the time of the accident, the cable having broken a few days before. Burrington testified that based upon his tachometer readings he was not traveling faster than 43 miles per hour at the time of the collision.

Defendant Furze testified that as he drove from Deadwood towards Lead at an estimated speed of 50 miles per hour in the right-hand lane after leaving Central City, the Burrington car passed him in the vicinity of the Calamity Jane curve and then pulled back into the right-hand lane. He testified that he was approximately 200 feet behind the Burrington vehicle traveling at approximately 45 to 50 miles per hour at the time the collision occurred between the Heine and Burrington cars. He testified that upon seeing the collision he immediately brought his car to a stop before reaching the point of collision, although he left no skid marks on the highway.[1] Furze was driving a 1969 Ford Mach 1 Mustang automobile. The car was equipped with a 351 cubic inch V-8 engine, a four-speed manually shifted transmission, a differential specially geared for highway travel, and a tachometer.

As a part of his case in chief, Heine offered the testimony of two drivers who had traversed the road from Lead to Central City just moments prior to the accident. The substance of their testimony was as follows: Mr. Donald B. Howe, an employee of the Homestake Mining Company who had lived in the area for some 36 years, left the Mine at approximately 9:30 on the night of July 18, 1969, with Mr. James Keith of Lead and went to Howe's office. The two men then decided to drive to the Alpine Drive-In in Central City to get some food. Mr. Howe got into his vehicle, a 1954 Universal jeep, and started driving down Highway 14A towards the Alpine Drive-In followed by Mr. Keith in his car. At approximately 10 p. m. as Mr. Howe reached the Calamity Jane curve two vehicles met him traveling abreast at what Mr. Howe considered an excessive rate of speed. He testified that the two cars were traveling at 70 miles per hour or better and that because of their speed he was unable to identify the two cars by model or color. He recalled seeing no traffic headed towards Lead other than these two vehicles. After Mr. Howe pulled into the Alpine Drive-In parking lot, a young girl came out and told him that the Drive-In was closed.

---

1. The investigating officer testified that there were no skid marks left by the Burrington and Furze cars nor any indication either Burrington or Furze had applied brakes just prior to the point of impact.

Mr. James W. Keith, a newspaper publisher who had lived in the Lead-Deadwood area for some two and a half years prior to the day in question, testified that he and Mr. Howe left the latter's office at approximately 9:45 p. m. on the night in question and started towards Central City in their separate vehicles, with Mr. Keith driving approximately 100 yards behind Mr. Howe. At about 10 p. m. Mr. Keith saw two automobiles coming up Highway 14A abreast at the upper corner of the Calamity Jane curve at a speed of 70 to 80 miles per hour. Mr. Keith testified that the car in the lane closest to his (the center lane of the three-lane highway) was white in color; he was unable to determine the color of the other car because it was in the extreme right-hand lane opposite and across from the white car. Mr. Keith testified that traffic was not heavy at the time and that he did not recall seeing any other automobiles during the entire trip from Lead down to the Alpine Drive-In.

Although the trial court made some general observations concerning his personal knowledge of the traffic on the highway in question, the grounds given for refusing the offer of proof in the Burrington case was that the witnesses had not positively identified the two automobiles which came at them at the high rate of speed; in the Lien case the court refused the offer because the witnesses were unable to identify the cars and because the time element was not tied in and because there was testimony that immediately after the accident the road was blocked with traffic.

In the Burrington case, Heine filed a counterclaim for damages for personal injuries and property damage and also filed a third-party complaint against Furze for contribution and for damages for personal injuries and property damage. At the close of all the evidence, the trial court directed a verdict in favor of Furze and against Heine on the third-party complaint and against Heine and in favor of Burrington on the counterclaim. The court also instructed the jury that Heine was guilty of negligence more than slight as a matter of law and that such negligence was a proximate cause of the accident and resulting damages to plaintiff Burrington. Although the court instructed the jury that plaintiff could not recover if his contributory negligence exceeded that which in the circumstances was slight in comparison with the

negligence of the defendant, the court in effect directed a verdict against Heine on the issue of negligence and on proximate cause inasmuch as the jury was permitted to balance only one side of the comparative negligence scale. See Nugent v. Quam, 82 S.D. 583, 152 N.W.2d 371; Crabb v. Wade, 84 S.D. 93, 167 N.W.2d 546; Smith v. Gunderson, 86 S.D. 38, 190 N.W.2d 841; and Corey v. Kocer, 86 S.D. 221, 193 N.W.2d 589, for the manner in which our comparative negligence statute is to be applied.

In the Lien case plaintiffs sued Heine, Furze and Burrington. The three defendants filed cross claims against each other. Plaintiffs' motion to dismiss their complaint against Burrington was granted before trial. At the close of all the evidence the trial court granted plaintiffs' motion for a directed verdict against Heine and directed a verdict in favor of Burrington and Furze and against Heine on Heine's cross claims against them. The court also directed a verdict in favor of Furze on plaintiffs' complaint.

■ We conclude that the court erred in rejecting the testimony of Mr. Howe and Mr. Keith. From the record it appears that these men were disinterested witnesses whose testimony, coupled with the testimony of Orin Craig and Sue Campbell, together with the testimony of Burrington and Furze which placed their cars in a side by side passing position in the vicinity of the Calamity Jane curve, was sufficiently definite in terms of place, time and identification to be considered by the jury on the question of the manner in and speed at which Burrington and Furze were driving at the time of the accident. [2] See, e. g., Miller v. Trans. Oil Co., 18 N.J. 407, 113 A.2d 777; Fretz v. Anderson, 5 Utah 2d 290, 300 P.2d 642; Ewing v. Miller, Fla.App., 172 So.2d 889; Annot. 46 A.L.R.2d 9. Cf. Pease v. Cochran, 42 S.D. 130, 173 N.W. 158.

---

2. Although the exact distance from the Calamity Jane curve to the point where the accident occurred does not appear in the record, an aerial map of the scene which shows the area from Lead to the Alpine Drive-In at Central City, coupled with the distances testified to by Mr. Craig and other witnesses, supports the conclusion that the distance in question is not so great as to render inadmissible the testimony of Mr. Howe and Mr. Keith.

■ Although we have given only a brief resume of the evidence and while of course there is evidence from which inferences could be drawn which would be unfavorable to Heine's theory of the case, when we view, as we must, the evidence in the light most favorable to him, including the testimony which we now hold should have been admitted, we conclude that the trial court erred in directing verdicts against Heine and in favor of plaintiffs and Burrington and Furze in the Lien case. Also, the court erred in directing verdicts in the Burrington case in favor of Burrington and Furze on Heine's counterclaim and third-party complaint for damages for personal injuries and property damage and in favor of Burrington on his complaint against Heine. Hansen v. Isaak, 70 S.D. 529, 19 N.W.2d 521; Langdon v. Reuppel, 81 S.D. 289, 134 N.W.2d 293; Corey v. Kocer, supra.

■ Heine's allegation that Burrington and Furze drove at a high, reckless and unlawful rate of speed and in a willful, wanton and negligent manner and that they were engaged in drag racing at the time of the accident stated a cause of action for Heine's personal injuries and property damage in the Burrington case and for contribution in the Lien case. See, e. g., Lemons v. Kelly, 239 Or. 354, 397 P.2d 784; Orszulak v. Bujnevicie, 355 Mass. 157, 243 N.E.2d 897; Annot., 13 A.L.R.3d 431. There was sufficient evidence to warrant submitting to the jury the question of Furze's liability on the theory that he was engaged in racing with Burrington at the time of the accident and that such racing was the proximate cause of the accident.

■ The court was correct in directing a verdict against Heine on his third-party claim for contribution against Furze in the Burrington case inasmuch as under Heine's theory that Burrington and Furze were engaged in a joint racing venture there could have been no liability running from Furze to Burrington and perforce none from Furze to Heine. Burmeister v. Youngstrom, 81 S.D. 578, 139 N.W.2d 226; Miller v. Baken Park, Inc., 84 S.D. 624, 175 N.W.2d 605.

■ Heine's contention that the trial court erred in not directing a verdict in his favor on his claim against Burrington

and Furze is not tenable in the light of the conflicting evidence. We find it unnecessary to rule on Heine's contention that the trial court should be directed to instruct the jury on retrial on the issue of Sandra Lien's assumption of the risk and contributory negligence. Cf. Miller v. Baken Park, Inc., 85 S.D. 133, 178 N.W.2d 560 (On Rehearing, Roberts and Biegelmeier dissenting in part). We have considered the other questions raised by Heine's assignments of error and conclude that those not made moot by our disposition of the case are without merit. [3]

The judgment in favor of plaintiffs on their complaint against Heine and the judgments in favor of Burrington and Furze on Heine's cross claims against them in # 11094, the Lien case, are reversed. The judgment in favor of Burrington on his complaint against Heine and against Heine on his counterclaim against Burrington and against Heine on his third-party complaint for damages for personal injuries and property damage against Furze in # 11095, the Burrington case, are reversed; the judgment against Heine on his third-party complaint for contribution against Furze in the latter case is affirmed. The cases are remanded to the circuit court for further proceedings in accordance with this opinion and with the direction that Heine's several claims against Burrington and Furze in both cases, with the exception of the third-party complaint against Furze for contribution in the Burrington case, be reinstated.

BIEGELMEIER, C. J., WINANS, J., and MANSON, Circuit Judge, concur.

MANSON, Circuit Judge, sitting for DOYLE, J., absent.

DUNN, J., not participating.

---

3. Because we are confident that such an incident will not reoccur, we deem it unnecessary to discuss Heine's contention that the trial court had a communication with the jury in the absence of counsel while the case was under deliberation.