1999 SD 93

**Mitchell Alan VILHAUER,**
**Plaintiff and Appellee,**

v.

**HORSEMENS' SPORTS, INC.,**
**Defendant and Appellant,**

and

**Corn Palace Stampede, Inc., Ray Henderson, Sutton Rodeos, Inc., and Mark Barnett, South Dakota Attorney General, Defendants.**

No. 20395.

Supreme Court of South Dakota.

Argued Jan. 14, 1999.

Reassigned May 19, 1999.

Decided July 21, 1999.

Wilson Kleibacker of Lammers, Lammers & Kleibacker, Madison, South Dakota, for plaintiff and appellee.

James L. Hoy of Hoy and Hoy, Sioux Falls, South Dakota, for defendant and appellant.

GILBERTSON, Justice (on reassignment).

[¶ 1.] Mitchell Vilhauer (Vilhauer) was injured after being struck in the face by a gate while working at the Corn Palace Stampede. Vilhauer brought suit against defendants Horsemens' Sports, Inc. (Horsemens' Sports), Corn Palace Stampede, Inc. (Stampede), Ray Henderson (Henderson), Sutton Rodeos, Inc. (Sutton), and Mark Barnett, South Dakota Attorney General, alleging numerous counts of negligence. Defendants asserted the defense of immunity provided by SDCL 42–11–2. The trial court found SDCL 42–11–1(6)(e) violated Article VI, Section 20 of the South Dakota Constitution. Due to the importance of this constitutional question we granted Horsemens' Sports' petition for an intermediate appeal. We now reverse.

## FACTS AND PROCEDURE

[¶ 2.] Horsemens' Sports owns the land in Mitchell, South Dakota where the Corn Palace Stampede is held. Stampede sponsors this annual rodeo and Sutton provides the stock. Henderson designed the gate. In his spare time, Vilhauer worked as a laborer at rodeos. He had worked at approximately eighty rodeos prior to this incident.

[¶ 3.] On July 16, 1994, Vilhauer was assigned to work the saddle bronc event at the Corn Palace Stampede. Following each individual saddle bronc event, the horse is led out of the main arena and into a catch pen. At the time of the incident, Henderson was operating the gate of the catch pen. After the horse is allowed into the catch pen, the horse enters a stripping chute where the saddle and halter are removed. Two sliding gates control this stripping chute, one toward the catch pen and the other away from the arena. Vilhauer's duty was to open and close the small gate leading into the stripping chute.

[¶ 4.] While other workers were removing the saddle and halter from the horse in the stripping chute, Vilhauer walked over toward the closed gate to see when the next horse was approaching. This gate was not normally opened or closed during the saddle bronc event and was used to form one of the fences making up the catch pen leading into the stripping chute.

[¶ 5.] When the next saddle bronc left the main arena and entered the catch pen, it ran into the gate. The gate popped open, striking Vilhauer in the face and causing personal injuries. Vilhauer does not know why the gate popped open.

[¶ 6.] Vilhauer filed suit on December 20, 1995, against the defendants, alleging a number of negligence counts. In addition, Vilhauer asked the court to declare SDCL ch 42–11 unconstitutional. The defendants raised the defense of immunity provided by SDCL 42–11–2. All of the parties moved for summary judgment. On January 30, 1998, the trial court issued a

declaratory judgment and order denying motions for summary judgment. Among other things, this order declared that SDCL 42–11–1(6)(e) violated Article VI, Section 20 of the South Dakota Constitution commonly referred to as the "open courts" provision. Horsemens' Sports appeals raising the following issue:

> Did the circuit court err by declaring SDCL 42–11–1(6)(e) unconstitutional.

### STANDARD OF REVIEW

■ [¶ 7.] Our review of the constitutionality of a statute is de novo. *Green v. Siegel, Barnett & Schutz*, 1996 SD 146, ¶ 7, 557 N.W.2d 396, 398 (citing *Kyllo v. Panzer*, 535 N.W.2d 896, 897 (S.D.1995)).

### ANALYSIS AND DECISION

[¶ 8.] **Did the circuit court err in declaring SDCL 42–11–1(6)(e) unconstitutional.**

[¶ 9.] Article VI, Section 20 of the South Dakota Constitution provides: "All courts shall be open, and every man for an injury done him in his property, person or reputation, shall have remedy by due course of law, and right and justice, administered without denial or delay."

[¶ 10.] SDCL ch 42–11 pertaining to equine activities, appears to be a legislative response to the difficulties experienced by rodeos and their sponsors due to liability claims and the cost of insurance. Whether gigantic leaps in the cost of insurance coverage are justified to offset increased claims has been the subject of substantial debate both in the judicial and legislative arenas of this state. *See generally Matter of Cert. of Questions of Law (Knowles )*, 1996 SD 10, ¶¶ 56–70, 544 N.W.2d 183, 195–99.

■ [¶ 11.] However, in analyzing the constitutionality of statutes partially limiting liability we have consistently held:

> Where the constitutional validity of a statute depends upon the existence of facts, courts must be cautious about reaching a conclusion respecting them contrary to that reached by the legislature; and if the question of what the facts establish be fairly debatable one, it is not permissible for the judge to set up his opinion in respect of it against the opinion of the lawmaker. *Radice v. New York*, 264 U.S. 292, 294, 44 S.Ct. 325, 326, 68 L.Ed. 690, 694 (1924).

*Wegleitner v. Sattler*, 1998 SD 88, ¶ 30, 582 N.W.2d 688, 697 (quoting *Knowles*, 1996 SD 10 at ¶ 67, 544 N.W.2d at 197).

[¶ 12.] The errors committed by the trial court in arriving at its conclusion are twofold. First, it failed to construe the entire chapter of SDCL ch. 42–11, but instead improperly examined SDCL 41–11–1(6)(e) in isolation. Second, it failed to consider the proper parameters of Article VI, Section 20.

[¶ 13.] Horsemens' Sports provided the rodeo grounds and thus qualified as an "equine activity sponsor" under SDCL 42–11–1(4). Vilhauer was a "person assisting a participant or show management," in a rodeo or "equine activity" pursuant to SDCL 42–11–1(1). As such, SDCL 42–11–2 granted the following protection: "[n]o equine activity sponsor ... or any other person, is liable for an injury to ... a participant resulting from the inherent risks of equine activities." Thus, Horsemens' Sports was able to invoke the protection of SDCL 42–11–1(6)(e), which via SDCL 42–11–2 provided a limited form of partial immunity for the following activity:

> The potential of a participant to act in a negligent manner that may contribute to injury to the participant or others, such as failing to maintain control over the animal or not acting within the participant's ability.

SDCL 42–11–1(6)(e).

[¶ 14.] The trial court erroneously concluded SDCL 42–11–1(6)(e) provides complete immunity against the claims of Vilhauer. In so doing, it failed to consider the exclusions created by SDCL 42–11–3. SDCL 42–11–3 removes the protection of

partial immunity incorporated in 42–11–1(6)(e) and SDCL 42–11–2 for the following conduct:

1. Providing faulty equipment or tack;
2. Failing to properly ascertain the participant's ability and/or provide an inappropriate animal;
3. Providing land or facilities with a known, dangerous latent condition without conspicuous warnings;
4. Committing acts in a willful or wanton disregard for the safety of the participant, and;
5. Intentionally injuring the participant.

SDCL 42–11–3(1), (2), (3) & (4).

[¶ 15.] Based on the allegations in Vilhauer's complaint, he does not become nonsuited should SDCL 42–11–1(6)(e) be held constitutional. As conceded by Horsemens' Sports at oral argument, it still must be determined if Vilhauer falls within the category of having his injuries caused by faulty equipment,[1] or if they were caused in a willful or wanton disregard for his safety. If he can show either or both, he may pursue this action against Horsemens' Sports.

[¶ 16.] Thus, the Legislature has not placed a blanket immunity in favor of those who operate rodeos. It has rather

placed a heightened burden of proof[2] for certain types of claims or excluded the partial immunity protection altogether for specific causes of injury. The actual issue before this Court is whether the Legislature may constitutionally take such action within the parameters of Article VI, Section 20.

> There is a strong presumption that the laws enacted by the legislature are constitutional and the presumption is rebutted only when it clearly, palpably and plainly appears that the statute violates a provision of the constitution. Further, the party challenging the constitutionality of a statute bears the burden of proving beyond a reasonable doubt that the statute violates a state or federal constitutional provision.

*Green,* 1996 SD 146 at ¶ 7, 557 N.W.2d at 398 (quoting *State v. Hauge,* 1996 SD 48, ¶ 4, 547 N.W.2d 173, 175 (other citations omitted)). Any reasonable and legitimate construction of a statute that does not violate constitutional principles must be adopted. *Harding County v. South Dakota State Land Users Ass'n,* 486 N.W.2d 263, 265 (S.D.1992).

[¶ 17.] The trial court relied on *Daugaard v. Baltic Co-op. Bldg. Supply Ass'n,* 349 N.W.2d 419 (S.D.1984) as the basis for its analysis. However, subsequent histori-

---

1. Although it is disputed whether the gate struck by the horse that ultimately struck Vilhauer was defective, there is no dispute that Vilhauer was struck by a gate. Thus, Vilhauer would be in a position to argue that a defective gate equates with "equipment" which Horsemens' Sports "knew or should have known ... was faulty, and such equipment ... was faulty to the extent that it causes the injury...." SDCL 42–11–3(1). The resolution of that issue is not on appeal before us.

2. The dissent places great importance upon the thesis that wanton and willful acts are different, rather than a derivative of, a claim for negligence. *Tranby v. Brodock,* 348 N.W.2d 458, 461 (S.D.1984); *VerBouwens v. Hamm Wood Products,* 334 N.W.2d 874, 876 (S.D.1983). In other cases we have indicated to the contrary. *Burrington v. Heine,* 88 S.D. 65, 215 N.W.2d 119, 124 (S.D.1974); *Robe v.*

*Ager,* 80 S.D. 597, 129 N.W.2d 47, 52 (S.D. 1964); *Wakefield v. Singletary,* 76 S.D. 417, 80 N.W.2d 84, 86 (S.D.1956). *See also* SDCL 34–45–17 ("willful or wanton negligence"). For purposes of Article VI, Section 20 analysis, at most, it is a distinction without a difference even if there is a distinction to begin with. Whichever view is taken, the definition of negligence and wanton and willful misconduct remain unchanged. The real issue now before us was answered by this Court more than 20 years ago, as will be more fully developed in the subsequent discussion of *Behrns v. Burke,* 89 S.D. 96, 229 N.W.2d 86 (1975) and *Brakke v. Olson,* 89 S.D. 142, 229 N.W.2d 220 (1975). *See infra* ¶ 20. In the aforementioned cases, this Court upheld a guest statute, which precluded recovery for negligence but allowed recovery for wanton and willful misconduct, against an Article VI, Section 20 challenge.

cal research and analysis by this Court in *Green* and *Wegleitner*[3] has concluded the proper scope of Article VI, Section 20 to be:

> Given the above nature of the understanding of the drafters of the constitutional provisions and its contemporary judicial interpretations, it is clear that these provisions in South Dakota and surrounding states were meant to allow unhindered access to the courthouse by a person who had a valid cause of action based on existing statute or the common law, timely and properly brought, who then would be allowed to present their case to a human fact finder. In other words under those conditions, a litigant was guaranteed its day in court.... In *Green,* we analyzed our case law from *McClain* in 1897 up to *Knowles* in 1996 and found no basis for a claim that Art. VI, § 20 could by itself become a sword to create a cause of action or become a shield to prohibit statutorily recognized barriers to recovery such as a statute of limitations.

*Wegleitner*, 1998 SD 88 at ¶ 33, 582 N.W.2d at 698.[4]

[¶ 18.] Such a constitutional theory, as was adopted by the trial court, cannot be supported under proper analysis. Throughout the legal history of this jurisdiction damages have been authorized in certain instances for wanton and willful acts but not so authorized for negligent acts.

[¶ 19.] In 1877 the Dakota Territorial Legislature passed what is now SDCL 20–9–1 that authorizes a cause of action for negligence. The same Legislature adopted what is now SDCL 21–3–2 that authorizes recovery of punitive damages in certain types of torts. Punitive damages may be recovered for wanton and willful acts of the tortfeasor. *See Dahl v. Sittner*, 474 N.W.2d 897, 900 (S.D.1991). Thus, since 1877 this jurisdiction has allowed recovery of punitive damages for wanton and willful conduct and not mere negligence. *Grynberg v. Citation Oil & Gas Corp.*, 1997 SD 121, ¶ 42, n. 10, 573 N.W.2d 493, 506, n. 10. This wanton and willful requirement passed through the adoption process[5] of our Constitution in 1889 with-

---

3. In fairness to the trial court, this Court had not decided *Wegleitner* when the trial court rendered this decision.

4. Given this all-encompassing holding of *Wegleitner* concerning the constitutional issues now before us, any attempt to distinguish *Wegleitner* because of the historical differences in the treatment of liquor issues is without constitutional support. Furthermore, *Wegleitner* builds upon *Knowles* and *Green*, which have nothing to do with liquor.

5. The Dakota Territorial Code of 1887 is replete with statutes forbidding malicious or willful acts which, if caused by mere negligence, were not forbidden by those statutes. Under the 1887 Code all the following were civilly actionable under § 4574 of that Code. That Code prohibited: malicious prosecution (§§ 5191, 7174), malicious mischief, and authorizes treble damages (§ 6882), willfully administering poison to an animal (§ 6884), maliciously wounding or killing an animal (§ 6885), maliciously encouraging an animal to bite or attack a human (§ 6887), willful burning of a building not amounting to arson (§ 6890), willfully defacing a house of wor-

ship (§ 6891), maliciously setting off an explosion (§ 6892), willful trespass and removal of crops (§ 6894), wanton removal of timber (§ 6895), malicious taking of another's crops (§§ 6896–9), malicious removal of a boundary monument (§ 6900), malicious destruction of a dam (§ 6901), willful removal of a buoy in the Missouri River (§ 6903), willful exhibiting a light or signal to derail a train (§ 6905), malicious destruction of another's documents (§ 6909), willful mutilation of document by messenger (§ 6907), willful unauthorized reading of another's mail (§ 6908), malicious retaining of another's telegraph message (§ 6910), willful damage or destruction of a monument (§ 6911), malicious destruction of works of art (§ 6912), willful breaking of another's water or gas line (§ 6913), willfully destroying or selling mortgaged property (§ 6933) and willfully committing any act "which grossly injures the person or property of another, or which grossly disturbs the public peace or health, or which openly outrages public decency, and is injurious to the public morals...." (§ 6934). The Code also distinguished between malicious (§ 6964), negligent (§ 6962) and willful (§ 6961) misconduct.

out the slightest hint of criticism that it may be in violation of the "open courts" provision of the soon-to-be-enacted Constitution.[6] Subsequent case law concerning punitive damages from this Court provides no basis for a conclusion to the contrary.

[¶ 20.] The constitutional question now before us was previously answered by this Court in *Behrns v. Burke,* 89 S.D. 96, 229 N.W.2d 86 (1975). Until 1978 the Legislature had in force a "guest statute" for motor vehicle passengers. SDCL 32–34–1, SL 1978, ch. 240 § 1. It prohibited a passenger's recovery of damages for negligence against the vehicle owner or operator. *Id.* However, it did not preclude recovery where there was "willful and wanton misconduct of the owner or operator.…" *Behrns,* 89 S.D. at 98, n. 1, 229 N.W.2d at 87, n. 1. In *Behrns* this willful and wanton standard was challenged in part as a violation of Article VI, Section 20. We upheld the statute declaring that the issue was "without merit and deserve[d] little attention." 89 S.D. at 99, 229 N.W.2d at 87. *See also Brakke v. Olson,* 89 S.D. 142, 229 N.W.2d 220 (1975).

[¶ 21.] In *Knowles,* a cap on medical malpractice damages was challenged in part on the grounds it violated Article VI, Section 20. In rejecting this challenge we held the " 'Constitution does not forbid the creation of new rights, or the abolition of old ones recognized by the common law, to attain a permissible legislative object.' … Malpractice plaintiffs are entitled to a remedy 'by due course of law.' That is all the open courts clause guarantees."

*Knowles,* 1996 SD 10 at ¶ 84, 544 N.W.2d at 203 (citations omitted).[7] If we upheld a cap in *Knowles* on the amount of damages recoverable for negligent acts from an Article VI, Section 20 challenge, Vilhauer fails to articulate what constitutional rationale would strike down a recovery for damages under a heightened burden of proof of wanton and willful with no monetary cap on damages. As in *Knowles,* this section is also a partial limitation on the right to recover damages.

[¶ 22.] Vilhauer's reliance on *Kyllo,* 535 N.W.2d 896 is misplaced. In *Kyllo,* we held a statute unconstitutional because it placed an absolute ban on any recovery from the time of the commission of the tort. As such, it stands along with *Moberg v. Scott,* 38 S.D. 422, 161 N.W. 998 (1917), as an unsuccessful attempt by a tortfeasor to achieve judicial recognition of an absolute bar to any recovery at any time. Vilhauer's claim may be vindicated if he meets the statutory exceptions (faulty equipment) or can meet the heightened burden of proof required of wanton and willful misconduct. Our prior cases have upheld such partial restrictions. *See Wegleitner,* 1998 SD 88, 582 N.W.2d 688; *Green,* 1996 SD 146, 557 N.W.2d 396; *Behrns,* 89 S.D. 96, 229 N.W.2d 86.

[¶ 23.] Our neighboring state of Nebraska in *Peterson v. Cisper,* 231 Neb. 450, 436 N.W.2d 533 (1989) upheld a statute granting a liability exemption to co-employees against an open courts challenge. In so doing, it based its rationale on an earlier case decided in the same era as the drafting of the South Dakota Constitution.

---

These statutes survived the adoption of Article VI, Section 20 in the 1889 Constitution and became statutes in the new State of South Dakota. 1890 SD Law 105. *See also* chapter 56 of 1903 Penal Code. Although many members of the Constitutional Convention were to become Legislators in the new State of South Dakota, the early State Legislators felt no constitutional compulsion to strike down these existing statutes because of the adoption of the "open courts" provision contained in the South Dakota Constitution. *Green,* 1996 SD 146 at ¶ 19, 557 N.W.2d at 402.

6. South Dakota Constitutional Debates of 1885 and South Dakota Constitutional Debates of 1889.

7. We did, however, strike down SDCL 21–3–11 as in violation of the substantive due process clause of the South Dakota Constitution. *Knowles,* 1996 SD 10 at ¶ 73, 544 N.W.2d at 199. Vilhauer has not raised a similar claim in this proceeding and thus such a question is not properly before us.

The constitution did not have the effect, on its adoption, to petrify the social structure. The purpose or intent of its adoption was not to preclude legislation, except in certain specified instances, where the power of the legislature for harm is expressly and impliedly restricted. It was not intended that the common law should thenceforth continue to the end of time, unaltered by legislative action. If such had been the intention, a legislative branch of the state government would have been a superfluity. One of the main purposes for which that branch of government is created is that the common law may from time to time be changed or abrogated in those instances wherein, by reason of changed social conditions, or other reasons, it may become ineffectual for the preservation of public or private rights. "A person has no property, no vested interest, in any rule of the common law." *Munn v. Illinois,* 94 U.S. 113, 134, 24 L.Ed. 77. Neither is there such a thing as a vested right in any particular remedy.

*Peterson,* 436 N.W.2d at 537 (citation omitted).

[¶ 24.] In *Meyer v. Kendig,* 641 P.2d 1235 (Wyo.1982), another neighboring state upheld co-employee immunity despite the provisions of its constitution's open courts guarantee. In so doing, the *Meyer* court set forth what was meant by Wyoming's constitutional open courts guarantee:

The services of the district court and of this court have been utilized in this case. The fact that the courts are required to be open and to afford justice for injury done does not mean that a party is assured of success in a legal action, or that standards cannot be set for, and limitations cannot be placed upon, causes of action—all in the interest of justice. The court was open to appellee. She has availed herself of its services. The administration of justice in this case is the process in which we are now involved. [The statute] only sets a standard to be applied by the courts in an action by an employee against a co-employee for negligence resulting in a work-related injury. Such is not a violation of Art 1, § 8 of the Wyoming Constitution.

641 P.2d at 1241.

[¶ 25.] In *Hirpa v. IHC Hospitals, Inc.,* 948 P.2d 785 (Utah 1997), the plaintiff challenged the Utah Good Samaritan law that provided good faith immunity to a doctor coming to the emergency assistance of a person needing such treatment. Rejecting an alleged violation of the open courts provision of the Utah Constitution, the court declared it would uphold the statute as it was not unreasonable or arbitrary and it furthered its statutory objectives. *Id.* at 792. Similarly, "[t]he 'access right' guarantees access to the courts only when an individual has a viable claim for relief." *Norsby v. Jensen,* 916 P.2d 555, 563 (Colo.App.1995) (upholding limited immunity for correctional personnel). *See also Stout v. Grand Prairie Indep. Sch. Dist.,* 733 S.W.2d 290 (Tex.App.–Dallas 1987) (upholding limited immunity for teachers).

■ [¶ 26.] In summary, there is no constitutional basis under Article VI, Section 20 for striking down SDCL 42–11–1(6)(e).[8]

---

8. The limited immunity of SDCL 42–11–1(6)(e) is not unique to our current statutes. Heightened standards of proof for recovery apply to other types of claims which the Legislature has determined are justified such as Good Samaritan emergency health care (SDCL 20–9–4.1), 911 telephone service (SDCL 34–45–17), donation of food (SDCL 39–4–22 and 39–4–23) and advanced life support personnel (SDCL 36–4B–24). What will be the constitutional fate of these types of statutes if the trial court's analysis is sustained? *See also* SDCL 20–9–11 (trespassers on flooded land); SDCL 20–9–16(1) (outdoor recreational use-private land); SDCL 20–9–26 (outdoor recreational use-public land); SDCL 21–3–2 (punitive damages); SDCL 23A–28–11 (community service restitution plan); SDCL 32–20A–22 (rental of snowmobile equipment); SDCL 33–15–18.1 (assistance with handling

Vilhauer may not be excluded from the courtroom by requiring him to pay rent on it or suffer fees not uniformly applied to others in his situation. *McClain v. Williams*, 10 S.D. 332, 73 N.W. 72 (1897). Neither may nonuniform procedures or conditions exclude him. *Claggett v. Dep't of Revenue*, 464 N.W.2d 212 (S.D.1990). He may also not be denied access based on his race, color, national origin or sex. *See Moberg*, 38 S.D. 422, 161 N.W. 998. Such is forbidden by Article VI, Section 20. However, he must arrive at the courtroom with a valid cause of action and Article VI, Section 20 does not become the source of his legal claim. The "established meaning" of Article VI, Section 20 as cited above leads to but one conclusion. That conclusion is SDCL 42–11–1(6)(e) is a proper act of the Legislature to deal with a societal problem and it does not offend Article VI, Section 20. We reverse and remand to the trial court for further proceedings consistent with this opinion.

[¶ 27.] MILLER, Chief Justice, and KONENKAMP, Justice, concur.

[¶ 28.] AMUNDSON, Justice, concurs specially.

[¶ 29.] TRANDAHL, Circuit Judge, dissents.

[¶ 30.] TRANDAHL, Circuit Judge, sitting for SABERS, Justice, disqualified.

AMUNDSON, Justice (concurring specially).

[¶ 31.] I write specially to iterate that this case is not controlled by *Kyllo v. Panzer*, 535 N.W.2d 896 (S.D.1995). Issue one in *Kyllo* was: "Whether the trial

courts improperly determined that SDCL 21–32–17 and 21–32A–2 are unconstitutional to the extent they purport to limit damages for a state employee's negligence when performing 'ministerial' acts?" 535 N.W.2d at 897. This Court held that: "Considering the history of sovereign immunity, the common law of negligence and the South Dakota Constitution, we agree that SDCL 21–32–17 and 21–32A–2 are unconstitutional so far as they extend sovereign immunity to state employees performing ministerial functions." *Kyllo*, 535 N.W.2d at 903. Unlike *Kyllo*, the present case has nothing to do with sovereign immunity or whether state employees are performing discretionary or ministerial functions. Further, this case does not close the doors to the courthouse as was the case in *Kyllo*, 535 N.W.2d at 903. Consequently, the decision in *Kyllo* does not support the holding of the trial court regarding this constitutional issue.

TRANDAHL, Judge (dissenting).

[¶ 32.] I respectfully dissent. Article VI, Section 20, of the South Dakota Constitution provides: "All courts shall be open, and every man for an injury done him in his property, person or reputation, shall have remedy by due course of law, and right and justice, administered without denial or delay." Generally, courts have determined the intent behind constitutional "open courts" provisions is "to preserve the common-law right of action for injury to person or property[.]" *Kyllo v. Panzer*, 535 N.W.2d 896, 900 (S.D.1995) (citations omitted).

hazardous material); SDCL 33–15–38 (emergency management); SDCL 47–23–29 (volunteers of nonprofit organization); SDCL 49–2–9 (disclaimer of liability by common carrier); SDCL 50–13–15 (aircraft guest statute); SDCL 58–37A–8 (officers of fraternal benefit societies).

> The Legislature has made a public policy decision that beneficial services such as Good Samaritans should be encouraged, rather than discouraged, by offering such

good-faith protection. The unpleasant alternative is that the would-be provider of the essential help will instead "pass by on the other side of the road" out of self-protection concerns about being sued for negligence if he or she was to help. There is no basis to conclude the framers of our Constitution intended to discourage such acts that are obviously beneficial to the public.

[¶ 33.] South Dakota's first negligence statute, codified at SDCL 20–9–1, was enacted in 1877, twelve years prior to the birth of our state constitution in 1889. SDCL 20–9–1 provides: "[e]very person is responsible for injury to the person, property, or rights of another caused by his willful acts or caused by his want of ordinary care or skill, subject in the latter cases to the defense of contributory negligence." This statute is a "simple codification of the common law of negligence." *Matter of Certif. of Questions of Law,* 544 N.W.2d 183, 188 (S.D.1996).

[¶ 34.] As we recently stated in *Matter of Certif. of Questions of Law:*

"Open courts" is not a guarantee that all injured persons will receive full compensation or that remedies once existent will always remain so. *Kyllo,* 535 N.W.2d at 901; *cf Wright,* 391 S.E.2d at 570. Nor does this provision assure that a substantive cause of action once recognized in the common law will remain immune from legislative or judicial limitation or elimination. *Kyllo,* 535 N.W.2d at 901; *Wright,* 391 S.E.2d at 570. Otherwise, the state of tort law would remain frozen in the nineteenth century, immutable and eventually, obsolete. Reasonable restrictions can be imposed upon available remedies. *Kyllo,* 535 N.W.2d at 901; *Baatz v. Arrow Bar,* 426 N.W.2d 298, 304 (S.D.1988). Our function is not to elevate common-law remedies over the Legislature's ability to alter those remedies, but rather, we are to interpret the laws as they affect the "life, liberty, or property of the citizens of the State." *Kyllo,* 535 N.W.2d at 901.

544 N.W.2d at 203. The legislature can impose only *reasonable restrictions* that do not infringe on common-law actions guaranteed by the constitution. *Kyllo* 535 N.W.2d at 903.

[¶ 35.] SDCL ch. 42–11 provides tort liability to those involved in equine activi-

ties for injuries resulting from the "inherent risks of equine activities." Specifically, SDCL 42–11–2 provides, "No equine activity sponsor, equine professional, doctor of veterinary medicine, or any other person, is liable for an injury to or the death of a participant resulting from the *inherent risks of equine activities.*" (emphasis added). SDCL 42–11–1(6) defines "inherent risks of equine activities" as

those dangers or conditions which are an integral part of equine activities, including:

(a) The propensity of the animal to behave in ways that may result in injury, harm, or death to persons on or around them;

(b) The unpredictability of the animal's reaction to such things as sounds, sudden movement, and unfamiliar objects, persons, or other animals;

(c) Certain hazards such as surface and subsurface conditions;

(d) Collisions with other animals or objects;

(e) *The potential of a participant to act in a negligent manner* that may contribute to injury to the participant or others, such as failing to maintain control over the animal or not acting within the participant's ability. (emphasis added).

The trial court found SDCL 42–11–1(6)(e) unconstitutionally violated South Dakota's open courts provision, not being a reasonable restriction on an individual's statutory and constitutional right to seek redress for their injuries.

[¶ 36.] Horsemens asserts when SDCL ch. 42–11 is examined as a whole, the legislature has placed a reasonable restriction on negligence actions by heightening the standard needed for recovery from "negligence" to "willful or wanton disregard." Horsemens argues that SDCL 42–11–3 [9] provides exceptions to the general non-liability expressed by SDCL 42–11–2. Specifically, that the legislature's require-

---

9. SDCL 42–11–3 provides:

Nothing in this chapter prevents or limits the liability of an equine activity sponsor,

an equine professional, or any other person if the equine activity sponsor, equine professional, or other person:

ment of "willful or wanton disregard" in SDCL 42–11–3(3) is a reasonable restriction on negligence actions.

[¶ 37.] However, Horsemens' heightened standard argument should fail because it misinterprets South Dakota's negligence law. While some courts consider willful and wanton conduct to be a higher degree of negligence, other courts consider willful and wanton conduct a different kind of conduct than negligence. *See* 57A AmJur2d § 257–62. South Dakota case law clearly defines willful and wanton conduct as being a distinct kind of conduct from negligence.

> *Willful and wanton misconduct is something more than ordinary negligence but less than deliberate or intentional conduct. Granflaten v. Rohde,* 66 S.D. 335, 283 N.W. 153 (1938). Conduct is gross, willful, wanton, or reckless when a person acts or fails to act, with a conscious realization that injury is a *probable,* as distinguished from a *possible* (ordinary negligence), result of such conduct. *Granflaten,* 66 S.D. 335, 283 N.W. 153. Contradistinguished, intentional tortious conduct is when an ordinary, reasonable, prudent person would believe an injury was substantially certain to result from his conduct. *Spivey v. Battaglia,* 258 So.2d 815 (Fla. 1972). To establish intentional conduct, *more than the knowledge and appreciation of risk is necessary;* the known danger must cease to become only a

(1) Provides the equipment or tack, and knew or should have known that the equipment or tack was faulty, and such equipment or tack was faulty to the extent that it causes the injury; or provides the animal and fails to make reasonable and prudent efforts to determine the ability of the participant to engage safely in the equine activity and determine the ability of the participant to safely manage the particular animal based on the participant's representations of his ability;
(2) Owns, leases, rents, or otherwise is in lawful possession and control of the land

foreseeable risk which an ordinary, reasonable, prudent person would avoid (ordinary negligence), and become a *substantial certainty. Spivey,* 258 So.2d 815. (emphasis added).

*VerBouwens v. Hamm Wood Products,* 334 N.W.2d 874, 876 (S.D.1983). *See also Fenner v. Trimac Transp., Inc.,* 554 N.W.2d 485, 487 (S.D.1996); *Harn v. Continental Lumber Co.,* 506 N.W.2d 91, 96 (S.D.1993); and *Brazones v. Prothe,* 489 N.W.2d 900, 905 (S.D.1992). *"[Willful and wanton misconduct] describes conduct which transcends negligence and is different in kind and characteristics.* It is conduct which partakes to some appreciable extent, though not entirely, of the nature of a deliberate and intentional wrong." (emphasis added). *Tranby v. Brodock,* 348 N.W.2d 458, 461 (S.D.1984).

[¶ 38.] Prior case law clearly distinguishes willful and wanton conduct as being distinct from negligence. The legislature's requirement of willful and wanton conduct rather than mere negligence operates to abolish a cause of action based on negligence, not limit it.

[¶ 39.] The common law of negligence is codified at SDCL 20–9–1, being enacted twelve years prior to South Dakota's constitution. *Kyllo* at 899. In *Kyllo,* this Court stated the following regarding negligence law:

> Negligence law must have some degree of flexibility. However, it is an entirely different and unacceptable proposition to assume that the flexibility of our neg-

or facilities upon which the participant sustains any injury because of a dangerous latent condition which was known to the equine activity sponsor, equine professional, or person and for which warning signs had not been conspicuously posted;
(3) Commits an act or omission that constitutes willful or wanton disregard for the safety of the participant and that causes the injury;
(4) Intentionally injures the participant.

ligence law may act in degradation of the fundamental foundation of our state constitution. Our constitution . . . is solid core upon which all our state laws must be premised. Clearly and unequivocably, our constitution directs that the courts of this state shall be open to the injured and oppressed. We are unable to view this constitutional mandate as a faint echo to be skirted or ignored. (citations omitted).

*Kyllo,* 535 N.W.2d at 903 (quoting *Daugaard v. Baltic Co-op. Bldg. Supply Ass'n,* 349 N.W.2d 419, 425 (S.D.1984)).[10] In *Kyllo,* this Court found statutes which extended sovereign immunity to state employees violated the open courts provision of South Dakota's constitution, stating:

Regardless of state employment, Employees still owed the same duty of care to drive safely as any other driver not so employed. Employees' claimed immunization from suit does not extend to negligent individuals in any other sector of employment. The legislature cannot extend it to negligent individuals who work for the state.

*Kyllo,* 535 N.W.2d at 903. As the trial court stated, "Those who participate in an equine activity must be held to exercise the same care as a reasonable and prudent person would exercise under the same or similar circumstances, just as those who may be watching in the stands, driving down the highway or sitting in their living room."

10. This case is easily distinguished from our decision in *Wegleitner v. Sattler,* 582 N.W.2d 688 (S.D.1998). *Wegleitner* involved a challenge under South Dakota's open courts provision to South Dakota's statutory scheme regulating the selling of alcohol found in SDCL 35–11–1 and SDCL 35–4–78.

Unlike the present case where SDCL 20–9–1, enacted in 1877, codified the common law of negligence, at common law tavern owners are not liable. *Wegleitner,* 582 N.W.2d at 690 (quoting 45 AmJur2d *Intoxicating Liquors* § 553 (1969)). This common law rule of tavern owner non-liability is codified in SDCL 35–11–1. In addition, SDCL 35–4–78 regulates the selling of alcoholic beverages.

[¶ 40.] The legislature can impose only *reasonable restrictions* that do not infringe on common-law actions guaranteed by the constitution. *Id.* at 903. An individual's right to seek redress with regard to negligent actors is guaranteed by common law and by SDCL 20–9–1, which are supported by the "open courts" provision of the South Dakota Constitution. *Kyllo,* 535 N.W.2d at 901.

[¶ 41.] The immunity from liability for the ordinary negligence of another participant provided by SDCL 42–11–1(6)(e) is not a reasonable restriction on an individuals statutory and constitutional right to seek redress for the negligence of another under South Dakota's open courts provision.

In *Wegleitner,* it was held that SDCL 35–4–78 and SDCL 35–11–1 clearly express the legislative intent on tavern owner liability. Under the open courts provision of art. VI § 20 there was nothing in existing statutes or the common law to find SDCL 35–4–78 and SDCL 35–11–1 unconstitutional. In the present case, the legislature's passage of SDCL 42–11–1(6)(e), which provides immunity for injuries caused by the ordinary negligence of another participant, is an unreasonable restriction on actions for negligence guaranteed by SDCL 20–9–1, which codified the common law of negligence.